UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In the Matter of<br>Eric Adams 2025, Eric Adams, Sharon Adams, as Treasurer of Eric Adams 2025, Marietta Rozental, Joe Shanie, and Malcolm Adams,<br><br>                 Petitioners-Plaintiffs,<br><br>  - against -<br><br>New York City Campaign Finance Board,<br><br>                 Respondent-Defendant. | CIVIL ACTION NO. 25-cv-3380 (NGG) |

## ANSWER

Respondent-Defendant New York City Campaign Finance Board by its attorneys Lankler

Siffert & Wohl LLP answers the Verified Amended Petition/Complaint as follows:

**PARAGRAPH 1:**

This is a hybrid proceeding for relief pursuant to CPLR article 78, a declaration pursuant
to CPLR 3001, and money damages arising from the denial by the respondent New
York City Campaign Finance Board (the "CFB") of the applications by petitioners-plaintiffs Eric
Adams 2025 (the "Adams Campaign") and Mayor Eric Adams for matching funds under the
New York City Campaign Finance Program.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 1, but notes that Petitioner-Plaintiffs

also seek relief pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

**PARAGRAPH 2:**

The CFB has issued four decisions denying the Adams Campaign the campaign matching funds to which it is entitled under the New York City Campaign Finance Act. For the reasons that follow, the CFB has acted arbitrarily, capriciously, illegally, and unconstitutionally in doing so. Its determination must be set aside, and it must be directed to grant the application for public campaign funds to which the Adams Campaign is entitled.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 2, except admits that it has denied

matching funds to the Adams Campaign because the Adams Campaign was not eligible to

receive those funds.

**PARAGRAPH 3:**

Since denying campaign matching funds to the Adams Campaign, the CFB has further damaged the Adams Campaign by identifying Mayor Adams as a candidate in the Democratic Primary Election, in which Mayor Adams is not a candidate.

**ANSWER:**

Paragraph 3 does not require a response as it relates to the thirteenth and fourteenth causes of

action, which have been discontinued.

**PARAGRAPH 4:**

The principal ground on which the CFB has based its decision to deny campaign matching funds to the Adams Campaign is that the federal indictment of Mayor Adams gives it "reason to believe" that Mayor Adams "has violated federal and City laws" and "engaged in conduct detrimental to the Program," which it claims to be sufficient to deny campaign matching funds. But in America, it is axiomatic that everyone is presumed innocent until proven guilty. An indictment is not proof.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 4, except admits that it is a legal

principle in the American criminal justice system that a person charged with a crime is presumed

innocent until proven guilty.

**FOOTNOTE 1:**

The CFB has at times asserted Mayor Adams's failure to file his annual disclosure and the failure of the Adams Campaign to respond to the CFB's "request for documentation and information related to allegations in the indictment" as grounds for denying campaign matching funds. As discussed below, Mayor Adams has filed his annual disclosure and the Adams Campaign, which could not submit the requested documents while the indictment was pending, submitted them on April 14, 2025, less than two weeks after the indictment was dismissed.

**ANSWER:**

Respondent-Defendant denies the allegations in Footnote 1 except admits that the CFB cited

Mayor Adams's failure to file his annual disclosure and the failure of the Adams Campaign to

respond to the CFB's "request for documentation and information related to allegations in the

indictment" as grounds for denying public matching funds and that Mayor Adams filed his

annual disclosure to the satisfaction of the New York City Conflicts of Interest Board on April

25, 2025.

**PARAGRAPH 5:**

If the CFB has any evidence beyond the indictment, it would have relied on that evidence publicly to support its determination because of its stated commitment to transparency. The CFB's failure to cite any evidence to support its determination other than the indictment establishes that the CFB has no other such evidence.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 5.

**PARAGRAPH 6:**

The CFB's reliance on the indictment of Mayor Adams as the sole basis for its decision is particularly egregious given the circumstances surrounding that indictment. The Deputy Attorney General of the United States, who has had access to the entire prosecution file, including portions not available to the CFB or the public, has represented to the United States District Court, in a sworn statement, that the indictment "reflects an improper weaponization of the criminal justice system, which has given rise to 'appearances of impropriety and risks of interference with the 2025 elections in New York." He requested that the Court dismiss the indictment because "the appearances of impropriety are too great based on the conduct of the former U.S. Attorney who initiated the case." According to that same submission, one of the Assistant United States Attorneys who worked on the prosecution said that the theory that the United States Attorney who brought the case "had a political motive" for doing so "seems pretty plausible to me."

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 6, except admits that the Deputy

Attorney General filed a Response in Further Support of a Motion to Dismiss that included the

quotations in Paragraph 6.

**PARAGRAPH 7:**

The highly unusual, if not unprecedented, concession by the Department of Justice, that an indictment is flawed in that way and to that extent should discredit every allegation in the indictment.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 7.

**PARAGRAPH 8:**

The indictment has been dismissed with prejudice and neither the court nor a jury, and certainly not the CFB, will ever have the opportunity to assess the evidence, scrutinize the witnesses, or consider all available defenses.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations in Paragraph 8, except admits that the indictment has been dismissed with prejudice.

**PARAGRAPH 9:**

Not a single person has admitted to committing or has been convicted of committing any criminal act or violation of any CFB rule with the knowledge of Mayor Adams.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraph 9.

**PARAGRAPH 10:**

A determination by an administrative body based solely on a dismissed indictment that was a product of the weaponization of government and resulted from improper political motives, as acknowledged by the United States Department of Justice, with no corroboration from any other reliable source, cannot be rational and is necessarily arbitrary and capricious.

**ANSWER:**

Respondent-Defendant lacks knowledge or information to admit or deny the allegations in

Paragraph 10.

**PARAGRAPH 11:**

If allowed to stand, the CFB's determination sets a dangerous precedent, empowering the CFB to sit as judge, jury, and executioner based on allegations and press reports, not evidence. Due process, fundamental fairness, and the requirement that administrative action have a rational basis that is not illegal, arbitrary, or capricious forbids such a result.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 11.

**PARAGRAPH 12:**

Further, neither CFB's rule giving itself the power to deny an application for campaign funds on the basis of "reason to believe" nor the basis on which it exercised that authority with respect to Mayor Adams and Eric Adams 2025 is a legitimate ground for denying campaign matching funds to the Adams Campaign. "Reason to believe" that Mayor Adams "has violated federal and City laws" and "engaged in conduct detrimental to the Program," is not a lawful or

constitutional standard for administrative action. It is unconstitutionally vague, is not narrowly drawn to protect the free speech rights of Mayor Adams, the campaign, and its donors, and impermissibly restricts the rights of Mayor Adams and his supporters to participate in the election on the same terms as other candidates.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 12.

**PARAGRAPH 13:**

The CFB's action is not authorized by the Campaign Finance Act, violates New York State law and the New York City Administrative Procedure Act, and, denies to Mayor Adams, the Adams Campaign, petitioners-plaintiffs Marietta Rozental, Joe Shanie and Malcolm Adams, as well as Mayor Adams's other supporters their federal and state constitutional rights to freedom of speech, to due process of law, and to participate equally with other candidates and New York residents in the electoral process.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 13.

**PARAGRAPH 14:**

An indictment is not a conviction; a politically-driven indictment that has been dismissed and for which there is no corroborating evidence is worth nothing at all. The CFB's reliance on the indictment as proof of anything, particularly now that it has been dismissed with prejudice, is, therefore, arbitrary, capricious, violative of lawful procedure, and erroneous as a matter of law.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 14, except admits that an indictment

is not a conviction.

**PARAGRAPH 15:**

Relying on an illegal standard to deny campaign matching funds to the Adams Campaign without substantial evidence to support its determination, is arbitrary and capricious and violates the constitutional rights of Mayor Adams, the Adams Campaign and the New York residents who support Mayor Adams.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 15.

**PARAGRAPH 16:**

The Court must therefore enter a judgment annulling the CFB's decision to deny

campaign matching funds to the Adams Campaign, ordering the CFB to grant the petition of the

Adams Campaign for campaign matching funds, declaring that the CFB's adoption of a "reason

to believe" standard is illegal, the CFB has violated the federal and state constitutional rights of

Mayor Adams, the Adams Campaign and Mayor Adams's supporters to participate in the 2025

mayoral election on the same terms as other candidates, and awarding Mayor Adams, the Adams

Campaign and Mayor Adams's supporters money damages in an amount to be determined at trial

and the attorneys' fees and litigation expenses they incur in this proceeding.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 16.

**PARAGRAPH 17:**

Petitioner-Plaintiff Eric Adams is the Mayor of the City of New York and a candidate for
re-election in the general election to be held on November 4, 2025. He is a resident of Kings
County.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 17, except lacks knowledge or

information sufficient to admit or deny the allegation about the county of his residence.

**PARAGRAPH 18:**

Petitioner-Plaintiff Eric Adams 2025 (the "Adams Campaign") has its principal place of

business at 120 Broadway, 28th Floor, New York, NY 10271.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 18.

**PARAGRAPH 19:**

Petitioner-Plaintiff Sharon Adams is a resident of Kings County and the Treasurer of the Adams Campaign.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 19, except lacks knowledge or

information sufficient to admit or deny the allegation about the county of her residence.

**PARAGRAPH 20:**

Petitioner-Plaintiff Marietta Rozental is a resident of Kings County who contributed $2,000 to the Adams Campaign.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the truth of

the allegations in Paragraph 20, except admits that Petitioner-Plaintiff Rozental contributed

$2,100 to the Adams Campaign in May 2023.

**PARAGRAPH 21:**

Petitioner-Plaintiff Joe Shanie is a resident of Kings County who contributed $1,100 to the Adams Campaign.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the truth of

the allegations in Paragraph 21, except admits that "Joseph Shamie" contributed $1,000 to the

Adams Campaign in March 2022 and $1,100 in July 2024.

**PARAGRAPH 22:**

Petitioner-Plaintiff Malcolm Adams is a resident of Kings County who contributed $100 to the
Adams Campaign.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the truth of

the allegations in Paragraph 22, except admits that Petitioner-Plaintiff Malcolm Adams

contributed $100 to the Adams Campaign in September 2023.

**PARAGRAPH 23:**

Respondent New York City Campaign Finance Board ("CFB") is the entity established in 1988

by the New York City Campaign Finance Act to administer the New York City Campaign

Finance Program.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 23.

**PARAGRAPH 24:**

The CFB has its principal office at 100 Church Street, New York, New York.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 24.

**PARAGRAPH 25:**

Venue is proper in Kings County because Kings County is a county in which the underlying material events giving rise to the CFB's determination occurred.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 25.

**PARAGRAPH 26:**

The Campaign Finance Program was established by the New York City Campaign Finance Act in 1988, which is codified as Chapter 7 of Title 3 of the New York City Administrative Code.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 26.

**PARAGRAPH 27:**

The 2025 election for Mayor of the City of New York is a "covered election" as that term is defined in the Campaign Finance Act.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 27.

**PARAGRAPH 28:**

On January 28, 2022, Mayor Adams filed a written certification with the CFB as required by the Campaign Finance Act.

**ANSWER:**

Respondent-Defendant admits the allegation of Paragraph 28.

**PARAGRAPH 29:**

Mayor Adams is a participating candidate as that term is defined in the Campaign Finance Act.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 29.

**PARAGRAPH 30:**

Eric Adams 2025 is Mayor Adams' principal committee as that term is defined in the Campaign Finance Act.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 30.

**PARAGRAPH 31:**

Pursuant to the Campaign Finance Act, "[e]ach participating candidate for nomination for election or election in a covered election may obtain payment to his or her principal committee from public funds for qualified campaign expenditures, in accordance with the provisions of this chapter, and subject to appropriation."

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 31 to extent that it accurately quotes a

portion of § 3-705 of the Campaign Finance Act, which contains many other applicable

provisions.

**PARAGRAPH 32:**

In 2022, the Adams Campaign began submitting proof of matchable contributions to the CFB in support of its application for campaign matching funds under the New York City Campaign Finance Program.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 32.

**PARAGRAPH 33:**

The CFB has acknowledged that the Adams Campaign has submitted proof to the CFB of matchable contributions in the amount of $429,896. Exhibit A.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 33.

**PARAGRAPH 34:**

Based upon the matchable contributions submitted, the Adams Campaign is entitled to $3,439,168 in campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 34.

**PARAGRAPH 35:**

New York City Administrative Code § 3-703(1) sets forth the standards under which an eligible candidate and the candidate's principal committee are eligible for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 35, except admits that § 3-703(1) sets out the requirements, that together with the CFB Rules, with which a candidate must comply in order to be eligible for matching funds.

**PARAGRAPH 36:**

Mayor Adams and the Adams Campaign have satisfied all the requirements for matching funds under NYC Administrative Code§ 3-703(1).

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 36.

**PARAGRAPH 37:**

Despite this, on December 16, 2024, the CFB met and determined that the Adams Campaign was not eligible for matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 37, except admits that it met on December 16, 2024 and denied matching funds to the Adams Campaign.

**PARAGRAPH 38:**

According to a press release issued by the CFB, CFB Chair Frederick Schaffer stated at the meeting:

> "After thoroughly reviewing all available information, including the details of the indictment of Mayor Adams, the Board has determined there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules. His campaign also failed to provide documents and information requested by the Board. Accordingly, Mayor Adams' campaign for reelection has failed to demonstrate eligibility for public funds payment at this time," said Frederick Schaffer, Chair of the New York City Campaign Finance Board. "Our priority remains achieving an equitable and transparent democracy that is accountable to all New Yorkers."

A copy of the CFB press release is attached as Exhibit B.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 38.

**PARAGRAPH 39:**

The CFB issued a "2025 Early Public Funds Nonpayment Determination" on December 16, 2024, stating, in relevant part:

> The Campaign is not eligible for payment because of preliminary findings of substantial violations which may result in penalties. Details regarding these findings will be sent to you shortly. See generally Admin. Code §§ 3-703; 3-705(1), 3-711; Board Rules 3-01(d)(i)(G), (ii)(H), 3-0l(e).

A copy of the determination is attached as Exhibit C.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 39.

13

**PARAGRAPH 40:**

The CFB issued a "2025 Public Funds Payment Determination Supplemental Notice" on December 18, 2024 supplementing its December 16, 2024 determination and specifying that its determination to deny campaign matching funds to the Adams Campaign was based on (i) the 2024 indictment of Mayor Adams which, the CFB determined, gave the CFB "reason to believe that Eric Adams (the "Candidate") has, in the course of public funds program (the "Program") participation, engaged in conduct detrimental to the Program that is in violation of federal and City law" and (ii) the failure of the Adams Campaign to respond to a request from the CFB staff "for documentation and information related to the allegations in the indictment." A copy of the notice is attached as Exhibit D.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 40, but denies that it is a fair

summary of the Supplemental Notice.

**PARAGRAPH 41:**

On January 15, 2015, the CFB again denied the request of the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 41.

**PARAGRAPH 42:**

In a "2025 Early Public Funds Nonpayment Determination" issued that day, the CFB stated the reason for its denial to be:

> The Campaign is not eligible for payment because of preliminary findings of substantial violations which may result in penalties. Details regarding these findings will be sent to you shortly. See generally Admin. Code §§ 3-703; 3-705(1), 3-711; Board Rules 3-0l(d)(i)(G), (ii)(H), 3-0l(e).

A copy of the determination is attached as Exhibit E.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 42.

14

**PARAGRAPH 43:**

On January 16, 2025, the CFB issued a second "2025 Public Funds Payment Determination Notice." Its explanation of the reason for the denial was simply, "Please see the letter dated December 18, 2024, for more information." A copy of the January 16, 2025, determination is attached as Exhibit F.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 43, except admits that CFB issued a

2025 Public Funds Payment Determination Supplemental Notice" on January 16, 2025, that it

contained the quoted language, and that a copy of the determination is attached as Exhibit F. The

document also cited Board Rules 3-01(d)(i)(B), (G), and (ii)(I) in its explanation of the reason

for the denial.

**Paragraph 44:**

The CFB considered the eligibility of the Adams Campaign for campaign matching funds on March 17, 2025. The "2025 Early Public Funds Nonpayment Determination" it issued that day cited three reasons for the denial:

> The Campaign is not eligible for payment because it has not demonstrated compliance with Admin. Code§ 12-110, as determined by the Conflicts of Interest Board. See Admin Code §§ 3-703(1)(m), 12-110; Board Rules 3-0l(d)(ii)(D), 3-05.
> The Campaign is not eligible for payment because the difference between the Campaign's reported receipts and documented receipts is equal to or greater than 10%. See Admin. Code§§ 3-703(l)(d), (6); Board Rules 3-0l(d)(i)(C), 4-0l(a), 4-04.
> The Campaign is not eligible for payment because of preliminary findings of substantial violations which may result in penalties. Details regarding these findings will be sent to you shortly. See generally Admin. Code §§ 3-703; 3-705(1), 3-711; Board Rules 3-0l(d)(i)(G), (ii)(H), 3-0l(e).

A copy of the determination is attached as Exhibit G.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 44.

**PARAGRAPH 45:**

April 3, 2025 was the last day on which to file a designating petition for a 2025 party primary.

**ANSWER:**

Paragraph 45 does not require a response as it relates to the thirteenth and fourteenth causes of action, which have been discontinued.

**PARAGRAPH 46:**

Mayor Adams did not file a petition cover sheet by April 3, 2025, rendering any petition designating him as a candidate in the 2025 Democratic Party primary for the public office of Mayor of the City of New York invalid.

**ANSWER:**

Paragraph 46 does not require a response as it relates to the thirteenth and fourteenth causes of action, which have been discontinued.

**PARAGRAPH 47:**

On April 14, 2025, Mayor Adams filed his annual disclosure.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 47, except admits that Petitioner-Plaintiff Mayor Adams made a partial filing with the Conflicts of Interest Board on April 14, 2025.

**PARAGRAPH 48:**

The CFB considered the eligibility of the Adams Campaign for matching funds once more on April 15, 2025. It determined "[b]ased on a preliminary analysis" that the campaign "does not qualify for a public funds payment at this time."

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 48.

**PARAGRAPH 49:**

The CFB's "2025 Early Public Funds Nonpayment Determination" dated April 15, 2025, stated this time that:

> The Campaign is not eligible for payment because it has not demonstrated compliance with Admin. Code § 12-110, as determined by the Conflicts of Interest Board. See Admin. Code §§ 3-703(l)(m), 12-110; Board Rules 3-0l(d)(ii)(D), 3-05.

A copy of the "2025 Early Public Funds Nonpayment Determination" is attached as Exhibit A.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 49.

**PARAGRAPH 50:**

The CFB issued a second "2025 Early Public Funds Nonpayment Determination" later on April 15, 2025, adding:

> The Campaign is not eligible for payment because of preliminary findings of substantial violations which may result in penalties. Details regarding these findings will be sent to you shortly. See generally Admin. Code§§ 3-703; 3-705(1), 3-711; Board Rules 3-0l(d)(i)(G), (ii)(H), 3-0l(e).

A copy of the "2025 Early Public Funds Nonpayment Determination" dated April 15, 2025, is attached as Exhibit H.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 50.

**PARAGRAPH 51:**

Also on April 15, 2025, the CFB issued a "2025 Public Funds Payment Determination Supplemental Notice," which asserts that the CFB's determination was based on the September

2024 indictment and other documents on the basis of which "[t]he Board has reason to believe that Eric Adams has, in the course of public funds program participation, engaged in conduct detrimental to the Program that is in violation of federal, state, and/or City law, including the Campaign Finance Act and Board Rules," and, second, that the Adams Campaign had failed to respond to the November 15, 2024 request by the CFB staff documents, records, and other information." A copy of the April 15, 2025 "2025 Public Funds Payment Determination Supplemental Notice" is attached as Exhibit I.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 51.

**PARAGRAPH 52:**

The Adams Campaign filed a petition for reconsideration of the CFB's April 15, 2025, determination on April 25, 2025. The appeal advised the CFB that Mayor Adams had satisfied the requirements of Administrative Code § 12-110 by filing his annual disclosure on April 14, 2025, and that the information requested in November 2024 had been submitted on April 14, 2025. The petition also contested the sufficiency of the CFB's determination as a matter of law. A copy of the appeal is attached as Exhibit J.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 52.

**PARAGRAPH 53:**

The CFB rejected the appeal on May 2, 2025.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 53.

**PARAGRAPH 54:**

In an email at 4:31 p.m. on May 2, 2025, Joseph Gallagher, the General Counsel of the CFB, advised Vito R. Pitta, the counsel to the Adams Campaign, that the Chair of the CFB, Frederick Schaffer, "is using his authority, delegated by the Board, to **deny** the Campaign's Petition." (Emphasis in original.) A copy of the email is attached as Exhibit K.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 54, but denies that is a fair summary of the email.

**PARAGRAPH 55:**

Mr. Gallagher's email states that "[p]ursuant to the Campaign's request, CFB staff is providing the attached amended supplemental non-payment determination notice that provides the Campaign more detail on the violations of law to which the Campaign may respond."

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 55, but denies that is a fair summary of the email.

**PARAGRAPH 56:**

Also on May 2, 2025, the Adams Campaign received an "Amended 2025 Early Public Funds Nonpayment Determination" identifying the reasons for nonpayment as failure to comply with Administrative Code § 12-110, the CFB's asserted "reason to believe that the Candidate has, in the course of public funds program participation, engaged in conduct detrimental to the Program," and the Adams Campaign's alleged failure "to provide to the Board, upon its request, documents, records, or other information that verifies campaign activity by the deadline set forth by the Board. Board Rule 3-0l(d)(i)(A)(2)." A copy of the CFB's May 2, 2025 "Amended 2025 Early Public Funds Nonpayment Determination" is attached as Exhibit L.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 56.

**PARAGRAPH 57:**

The Adams Campaign also received a "2025 Public Funds Payment Determination Amended Supplemental Notice" on May 2, 2025, signed by CFB General Counsel Joseph Gallagher. A copy of that document is attached as Exhibit M. That document identified two bases for the CFB's denial of campaign matching funds to the Adams Campaign.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 57, except admits that the letter

provided additional information about two of the reasons for the denial of matching funds.

**PARAGRAPH 58:**

First, the Amended Supplemental Notice states, without providing any specific factual
basis, that the CFB "has reviewed the information contained in the September 26, 2024
indictment," as well as various other documents, including the April 2, 2025 order of the United
States District Court dismissing the indictment with prejudice and, on that basis, has determined
that the CFB has "reason to believe" that Mayor Adams committed five federal crimes, violated
five New York State laws, and committed seven violations of the New York City Administrative
Code and CFB Rules.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 58, except admits that Paragraph 58

quotes a portion of the letter.

**PARAGRAPH 59:**

Second, the Amended Supplemental Notice acknowledges that the Adams Campaign had not
submitted a response to the CFB staff's November 15, 2024 because the requests related to the
pending indictment and that, after the indictment was dismissed on April 2, 2025, the Adams
Campaign had responded to the request on April 14, 2025, but states that the failure to respond
remains a basis for the CFB's denial of campaign matching funds because the "response was not
reviewed prior to the 10 AM meeting of the Board on April 15, 2025. The May 2, 2025,
Amended Supplemental Notice does not identify Mayor Adams's failure to file his annual
disclosure as a reason for denying the Adams Campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 59, except admits that Paragraph 59

quotes a portion of the letter and that the letter does not provide *additional* information about

Mayor Adams failure to file his COIB disclosure form, which was cited in the Amended 2025

Early Public Funds Nonpayment Determination letter of the same date.  The May 2, 2025

Amended Supplemental Notice stated that the Board's determination of ineligibility was made,

in part, pursuant to Rule 3-01(d)(ii)(A)(4), which says that there is mandatory ineligibility where

"the candidate fails to demonstrate compliance with Section 12-110 of the Code, as required

pursuant to § 3-703(1)(m) of the Code and section 3-05."

**PARAGRAPH 60:**

On May 12, 2025, the CFB ratified the Chair's decision to deny campaign matching funds
to the CFB. A copy of the CFB decision dated May 13, 2025 is attached as Exhibit N.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 60.

**PARAGRAPH 61:**

On May 27, 2025, Mayor Adams filed two independent nominating petitions, one for the
independent body named "Safe & Affordable" and the other for the independent body named
"End Antisemitism."

**ANSWER:**

Paragraph 61 does not require a response as it relates to the thirteenth and fourteenth causes of

action, which have been discontinued.

**PARAGRAPH 62:**

In the absence of a court order, the CFB will not make campaign matching funds available again
until July 15, 2025.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 62, except admits that the next

meeting at which Respondent-Defendant will consider whether the Adams Campaign is eligible

for matching funds is scheduled for July 15, 2025.

**PARAGRAPH 63:**

An administrative determination that is arbitrary and capricious, an abuse of discretion, made in violation of lawful procedure or affected by an error of law must be vacated and set aside in a proceeding pursuant to CPLR article 78.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations in Paragraph 63 because no specific circumstances are provided.

**PARAGRAPH 64:**

The CFB's relentless effort to deny campaign matching funds to the Adams Campaign is arbitrary, capricious, and illegal, and violates the right of Mayor Adams, the Adams Campaign, and the Mayor's supporters to participate on an equal basis with all other candidates in the mayoral campaign.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 64.

**PARAGRAPH 65:**

The role of the CFB is to administer the Campaign Finance Act fairly in accordance with the law as the City Council enacted it.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 65, except admits that its role, in part,

is to administer New York City's matching funds program in accordance with applicable laws,

regulations and rules.

**PARAGRAPH 66:**

It is not the role of the CFB to create new standards, not found in the Campaign Finance Act, that allow it to deny campaign matching funds to otherwise qualified candidates based upon its "belief," without any factual support, that the candidate has done things it considers to be "conduct detrimental" to the Campaign Finance Program.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 66.

**PARAGRAPH 67:**

The rule that the CFB used to deny campaign matching funds to the Adams Campaign
has no basis in the Campaign Finance Act and was beyond the authority of the CFB to create or
to enforce. The rule illegally allows the CFB to deny campaign matching funds without any
factual determination, based merely on the CFB's "reason to believe," on the basis of unproven
allegations in an indictment that has since been dismissed with prejudice.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 67.

**PARAGRAPH 68:**

The CFB's action has effectively made it impossible for Mayor Adams to compete in the
Democratic primary election.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 68.

**PARAGRAPH 69:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding
paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 70:**

The CFB's articulated basis for denying the request of the Adams Campaign for campaign
matching funds is that, "there is reason to believe the Adams campaign has engaged in conduct
detrimental to the matching funds program, in violation of law, including the Campaign
Finance Act and Board Rules."

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 70, except admits that one of the number of reasons that it denied matching funds to the Adams Campaign was because "there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules."

**PARAGRAPH 71:**

"Reason to believe" is not a lawful or constitutional standard for an administrative determination.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 71.

**PARAGRAPH 72:**

An administrative determination is lawful, and not arbitrary and capricious, only where it is based on facts in the record that provide "substantial evidence" to support the determination.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 72 because no specific circumstances are provided.

**PARAGRAPH 73:**

"[S]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably probatively and logically."

**ANSWER:**

Respondent-Defendant admits that Paragraph 73 quotes language from *300 Gramatan Ave. Assocs. v. State Div. of Hum. Rts.,* 45 N.Y.2d 176 (1978).

24

**PARAGRAPH 74:**

"Reason to believe" is not substantial evidence.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 74.

**PARAGRAPH 75:**

Any acts taken on the basis of "reason to believe" are, therefore, invalid because they are made in violation of lawful procedure and are affected by an error of law.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 75.

**PARAGRAPH 76:**

The CFB's determination to deny Adams Campaign matching funds because the CFB has "determined there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules" must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 76.

**PARAGRAPH 77:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 78:**

The failure of an administrative body to follow its own rules makes the body's determination arbitrary, capricious, and in violation of law.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations in Paragraph 78 because no specific circumstances are provided.

**PARAGRAPH 79:**

CFB Rules 7-08 and 7-09 require that the CFB "notify the candidate in writing of any non-payment determination "and provide to the candidate" a written determination to a candidate specifying the basis for payment or non-payment of public funds prior to the election."

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 79, except admit that Paragraph 79

quotes portions of Rules 7-08 and 7-09.

**PARAGRAPH 80:**

CFB Rule 10-03 requires that the CFB "notify the candidate ... of any infractions or violations of alleged to have been committed by such party, ... set forth in detail the factual and legal basis ... , notify the party of the opportunity to submit information and documentation for the Board's consideration within a time period to be specified in such notice; and (iv) notify the party of the opportunity to appear at a hearing before the Board or an administrative law judge to contest the alleged violations or infractions, penalties, and public funds repayment obligation."

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 80, except admits that Paragraph 80

quotes portions of Rule 10-03.

**PARAGRAPH 81:**

The CFB has failed to comply with Rules 7-08, 7-09, and 10-03 in denying campaign matching funds to the Adams Campaign.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 81.

**PARAGRAPH 82:**

The CFB's determination to deny Adams Campaign matching funds is therefore illegal, arbitrary, and capricious because it was made without the process required by applicable law and must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 82.

**PARAGRAPH 83:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 84:**

The Campaign Finance Act authorizes the CFB to determine eligibility for campaign matching funds.

**ANSWER:**

Respondent-Defendant admits the allegations of Paragraph 84.

**PARAGRAPH 85:**

The CFB has no authority to delegate its authority to make eligibility determinations.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 85.

**PARAGRAPH 86:**

The CFB did not make the determination of the Adams Campaign's eligibility, the Chair did.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 86.

**PARAGRAPH 87:**

CFB Rule 7-09(c)(i), which delegates to the Chair the authority to make eligibility determinations "[i]f the Board is unable to convene within five business days of receipt of the petition" is illegal, arbitrary, and capricious.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 87.

**PARAGRAPH 88:**

The CFB's determination to deny the Adams Campaign matching funds is a nullity and the CFB must therefore be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 88.

**PARAGRAPH 89:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 90:**

New York City Charter § 1046 - the New York City Administrative Procedure Act - requires that "[a]ny recommended decision, final decision, determination or order shall be in writing or stated in the record if the parties are present and shall include findings of fact and conclusions of law."

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 90, except admits that Paragraph 90 quotes a portion of the NYC Administrative Procedure Act.

**PARAGRAPH 91:**

"Reason to believe" is not a fact or a finding of fact.

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 91. "Reason to believe" is a standard.

**PARAGRAPH 92:**

The Campaign Finance Act does not authorize the CFB to act on the basis of "reason to believe."

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 92.

**PARAGRAPH 93:**

Without a factual determination, there cannot be a rational determination.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 93 because no specific circumstances are provided.

**PARAGRAPH 94:**

The CFB's determination to deny Adams Campaign matching funds was therefore made in violation of the City Administrative Procedure Act and must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 94.

**PARAGRAPH 95:**

Petitioners-Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 96:**

The Campaign Finance Act defines the eligibility requirements for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 96, except admits that the Campaign

Finance Act lists requirements for eligibility and empowers Respondent-Defendant to

promulgate rules and regulations necessary for the administration of the matching funds

program.

**PARAGRAPH 97:**

The requirement that there be no "reason to believe" that a campaign "has engaged in conduct detrimental to the matching funds program, in violation of law" is not among the eligibility requirements for campaign matching funds established by the Campaign Finance Act.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 97.

**PARAGRAPH 98:**

An administrative agency acts beyond its authority, and therefore illegally, arbitrarily, and capriciously, when it acts in a manner not authorized by the enabling legislation.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations in Paragraph 98 because no specific circumstances are provided.

**PARAGRAPH 99:**

Because the absence of "reason to believe" that a campaign "has engaged in conduct detrimental to the matching funds program, in violation of law" is not among the eligibility requirements of the Campaign Finance Act, the CFB acted arbitrarily, capriciously and illegally in denying campaign matching funds to the Adams Campaign on that basis.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 99.

**PARAGRAPH 100:**

The CFB's determination to deny Adams Campaign matching funds because the CFB has "determined there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules" must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 100.

**PARAGRAPH 101:**

Petitioners-Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 102:**

The Campaign Finance Act gives the CFB authority "to promulgate such rules and regulations and provide such forms as it deems necessary for the administration of this chapter."

**ANSWER:**

Respondent-Defendant admits the allegations in Paragraph 102.

**PARAGRAPH 103:**

The CFB's authority to promulgate rules and regulations for the administration of the Campaign Finance Program is not authority to create additional eligibility requirements not found in the Campaign Finance Act.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 103.

**PARAGRAPH 104:**

The CFB, like any other administrative agency, acts beyond its authority, and therefore illegally, arbitrarily, and capriciously, when it acts in a manner not authorized by the enabling legislation.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations in Paragraph 104 because no specific circumstances are provided.

**PARAGRAPH 105:**

The CFB had no authority to adopt a rule making the absence of "reason to believe" that a campaign "has engaged in conduct detrimental to the matching funds program, in violation of law" a requirement for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 105.

**PARAGRAPH 106:**

Since there is no statutory authority for the CFB's rule, the CFB acted illegally, arbitrarily and capriciously when it denied campaign matching funds to the Adams Campaign because it "determined there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules."

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 106.

**PARAGRAPH 107:**

The CFB's determination to deny the Adams Campaign matching funds because the CFB has "determined there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules" must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 107.

**PARAGRAPH 108:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 109:**

An indictment is an allegation, not a finding of fact.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 109, except admits that an indictment contains allegations.

**PARAGRAPH 110:**

"An indictment charges the Respondent-Defendant with action or failure to act contrary to the law's command. It does not constitute proof of the commission of the offense."

**ANSWER:**

Respondent-Defendant admits Paragraph 110 to the extent that it is a quotation from *Tot v. United States*, 319 U.S. 463 (1943).

**PARAGRAPH 111:**

An indictment is not proof, is not substantial evidence, and is not sufficient to establish even "reason to believe."

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 111.

**PARAGRAPH 112:**

The CFB's denial of campaign matching funds to the Adams Campaign solely on the basis of the indictment of Mayor Adams is therefore arbitrary and capricious and without support in the administrative record.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 112.

**PARAGRAPH 113:**

The CFB's determination to deny Adams Campaign matching funds because the CFB has "determined there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules" must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 113.

**PARAGRAPH 114:**

Petitioners-plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 115:**

It is a fundamental principle of law that a person accused of a crime is innocent until proven guilty. That principle apparently does not apply in the CFB.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 115, except admits that is a

fundamental principle of law in the United States criminal justice system that a person accused

of a crime is innocent until proven guilty.

**PARAGRAPH 116:**

The documents on which the CFB relied to deny campaign matching funds to the Adams Campaign, do not contain any facts, as opposed to allegations, that would establish even "reason to believe" that Mayor Adams has engaged in conduct that is detrimental to the Program that is in violation of federal, state, and/or City Law, including the Campaign Finance Act and Board Rules.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 116.

**PARAGRAPH 117:**

The substance of the allegations contained in the indictment is that Mayor Adams participated in a scheme to raise funds above the applicable contribution limit through the use of "straw donors."

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 117, except admits that the indictment alleges, in part, that Mayor Adams participated in a conspiracy to use "straw donors" and illegally obtain matching funds.

**PARAGRAPH 118:**

The indictment alleges in paragraph 20(a) that in June 2018 an unnamed Adams staffer asked Mayor Adams if the staffer should pursue an illegal foreign contribution and Mayor Adams said the staffer should. The indictment sets forth no evidence that what is alleged actually occurred.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 118, except admits that paragraph 20(a) of the indictment alleges that Mayor Adams told a staffer to pursue an illegal scheme to obtain funds from a foreign contributor.

**PARAGRAPH 119:**

The indictment alleges in paragraph 20(b) that in November 2018 Mayor Adams directed the staffer to accept an illegal contribution from a Turkish national. Again, the indictment sets forth no evidence that what is alleged actually occurred.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 119, except admits that paragraph 20(b) of the indictment alleges that Mayor Adams directed a staffer to obtain illegal contributions from a Turkish businessman.

**PARAGRAPH 120:**

The indictment alleges in paragraph 25 that in 2019 Mayor Adams solicited illegal contributions in Istanbul in January 2019 but acknowledges that the contribution was never made.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 120, except admits that paragraph 25 of the indictment alleges that Mayor Adams solicited illegal contributions from a wealthy Turkish businessman and discussed with a staffer how to funnel the funds to the campaign through straw donors but when that businessman's legal problems in Turkey and the U.S. became public, Mayor Adams declined to meet with the businessman when he came to New York and the illegal contribution was not made.

**PARAGRAPH 121:**

The indictment alleges in paragraph 30 that in 2021 a Turkish official and Turkish businessperson gathered "straw" donations for Mayor Adams after a dinner with Mayor Adams but does not allege that Mayor Adams knew that the donations were "straw" donations. The businessperson was indicted for conspiracy to commit wire fraud because of those donations, but neither the indictment nor the businessperson's plea allocution even suggests that Mayor Adams was aware that the donations were "straw" donations.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 121, except admits that paragraph 30 of the indictment alleges that Mayor Adams sought and accepted straw donations from Businessman-5.

**PARAGRAPH 122:**

The "Adams Staffer" identified in the indictment was apparently Mohamed Bahi. A sealed criminal complaint charging Bahi with witness tampering and destruction of records was filed on October 7, 2024. With respect to Mayor Adams' alleged involvement in the "straw donor" scheme, the complaint alleges only that Mayor Adams attended the dinner.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 122, except admits that a sealed criminal complaint against Mohamed Bahi was filed on October 7, 2024.

**PARAGRAPH 123:**

The indictment alleges in paragraph 30 that in September 2021 the President of a Turkish University's American branch exchanged texts with Mayor Adams and a staffer about raising funds and, in the course of the exchange, Mayor Adams texted, "We can't take money from people who are not U.S. citizens," but the indictment nevertheless suggested, without any evidence, that Mayor Adams had acquiesced in the plan.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 123.

**PARAGRAPH 124:**

The indictment alleges in paragraph 45 that in 2023 Mayor Adams "directed his staff to devise a plan" for him to "secretly obtain illegal foreign donations," but provides no evidence to support that allegation and then goes on to allege a series of conversations between a "promoter"

and an Adams staffer about the scheme. The paragraph alleges nothing about Mayor Adams' other than that he attended the fundraiser, about which nothing is claimed to be illegal, that he thanked a person who attended the fundraiser and is alleged to be a foreign national, even though there is nothing illegal about a foreign national attending a fundraiser.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 124, except admits that paragraph 45

of the indictment alleges that Mayor Adams directed his staff to devise a plan for him to secretly

obtain illegal foreign donations offered by a promoter and then knowingly accepted donations of

foreign money through straw donors and then attended a fundraiser to the thank the true donors,

who he know to be wealthy foreign donors.

**PARAGRAPH 125:**

There is not a scintilla of evidence, as opposed to allegations, in the indictment or the other documents on which the CFB relied that Mayor Adams knew of or participated in the "straw donor" scheme.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 125.

**PARAGRAPH 126:**

The Deputy Attorney General of the United States, who has had access to the entire prosecution file, including portions not available to the CFB or the public, told the United States District Court that "the prosecution reflects an improper weaponization of the criminal justice system, which has given rise to 'appearances of impropriety and risks of interference with the 2025 elections in New York."

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 126, except admits that the Deputy Attorney General filed a Response

in Further Support of a Motion to Dismiss that included the quotation in Paragraph 126.

**PARAGRAPH 127:**

The Deputy Attorney General further stated to the court in his submission that the indictment had to be dismissed because 'the appearances of impropriety are too great based on the conduct of the former U.S. Attorney who initiated the case."

**ANSWER:**

Respondent-Defendant admits that the Deputy Attorney General filed a Response in Further

Support of a Motion to Dismiss that included the quotation in Paragraph 127.

**PARAGRAPH 128:**

According to that same submission, one of the Assistant United States Attorneys who worked on the prosecution said that the theory that the United States Attorney who brought the case "had a political motive" for doing so "seems pretty plausible to me."

**ANSWER:**

Respondent-Defendant Deputy Attorney General filed a Response in Further Support of a

Motion to Dismiss that included the quotations in Paragraph 128.

**PARAGRAPH 129:**

The highly unusual, if not unprecedented, concession by the Department of Justice, that an indictment is flawed in that way and to that extent discredits every allegation in the indictment.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 129.

**PARAGRAPH 130:**

The District Court dismissed the indictment with prejudice.

**ANSWER:**

Respondent-Defendant admits that Judge Ho dismissed the indictment with prejudice.

**PARAGRAPH 131:**

Neither the court nor a jury, and certainly not the CFB, will ever have the opportunity to assess the evidence, scrutinize the witnesses, or consider all available defenses.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 131.

**PARAGRAPH 132:**

Not a single person has admitted to committing or has been convicted of committing any criminal act or violation of any CFB rule with the knowledge of Mayor Adams.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 132.

**PARAGRAPH 133:**

The CFB ignored all this and denied campaign matching funds to the Adams Campaign solely based on the allegations in the now-dismissed indictment.

**ANSWER:**

Respondent-Defendant denies the allegations in Paragraph 133.

**PARAGRAPH 134:**

Substantial evidence requires facts, not allegations.

**ANSWER:**

Respondent-Petitioner denies the allegations in Paragraph 134.

**PARAGRAPH 135:**

The CFB's denial of campaign matching funds to the Adams Campaign solely on the basis of the indictment of Mayor Adams is therefore arbitrary and capricious and without support in the administrative record.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 135.

**PARAGRAPH 136:**

The CFB's determination to deny Adams Campaign matching funds because the CFB has "determined there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules" must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 136.

**PARAGRAPH 137:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 138:**

Mayor Adams, the Adams Campaign, and Mayor Adams supporters have a constitutional right to participate in the mayoral election on the same terms as other candidates.

**ANSWER:**

Respondent-Petitioner denies the allegations of Paragraph 138, except admits that Mayor Adams

and his supporters have a constitutional right to participate in the mayoral election.

**PARAGRAPH 139:**

"Restrictions on access to the electoral process must survive exacting scrutiny. The restriction can be sustained only if it furthers a 'vital' governmental interest [ citation omitted], that is 'achieved by a means that does not unfairly or unnecessarily burden ... an individual candidate's equally important interest in the continued availability of political opportunity."

**ANSWER:**

Respondent-Petitioner admits that Paragraph 139 quotes from *Buckley v. Valeo*, 424 U.S. 1

(1976).

**PARAGRAPH 140:**

The CFB's denial of campaign matching funds to the Adams Campaign deprived Mayor Adams, the Adams Campaign and Mayor Adams' supporters of their interest in the "continued availability" of their opportunity to participate in the Democratic Party's mayoral primary and deprives Mayor Adams, the Adams Campaign and Mayor Adams' supporters of their interest in the "continued availability" of their opportunity to participate in the general election for mayor.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 140.

**PARAGRAPH 141:**

The CFB's denial of campaign matching funds to the Adams Campaign on the basis of an alleged "reason to believe" furthers no vital governmental interest.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 141.

**PARAGRAPH 142:**

The CFB's denial of campaign matching funds to the Adams Campaign on the basis of an alleged "reason to believe" violates the rights of Mayor Adams, the Adams Campaign, and Mayor Adams' supporters of their rights under the Fifth Amendment to the United States Constitution.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 142.

**PARAGRAPH 143:**

Petitioners-Plaintiffs are entitled to a declaration that the CFB's denial of campaign matching funds to the Adams Campaign on the basis of an alleged "reason to believe" violates the rights of Mayor Adams, the Adams Campaign, and Mayor Adams' supporters of their rights under the Fifth Amendment to the United States Constitution and to an injunction prohibiting the CFB from denying campaign matching funds to the Adams Campaign on the basis of an alleged "reason to believe" and ordering the CFB to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 143.

**PARAGRAPH 144:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 145:**

"The right to participate in democracy through political contributions is protected by the First Amendment."

**ANSWER:**

Respondent-Petitioner admits that Paragraph 145 selectively quotes from *McCutcheon v. Federal Elections Commission,* 572 U.S. 185 (2014). The full quote reads, "The right to participate in democracy through political contributions is protected by the First Amendment, but that right is not absolute.

**PARAGRAPH 146:**

Political contributions are protected by the First Amendment to the United States Constitution and Article I, § 8 of the New York State Constitution.

**ANSWER:**

Respondent-Petitioner denies the allegations of Paragraph 146, except admits that legal political contributions are protected by the First Amendment to the United States Constitution and Article I, § 8 of the New York State Constitution.

**PARAGRAPH 147:**

Free speech rights cannot be limited without good reason.

**ANSWER:**

Respondent-Defendant lacks knowledge or information to admit or deny the allegations of Paragraph 147 because no specific circumstances are provided.

**PARAGRAPH 148:**

The Campaign Finance Act requires the CFB to provide campaign funds to eligible candidates to match eligible contributions.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 148.

**PARAGRAPH 149:**

Campaign Finance Act § 3-705(2)(a) provides that "[if] the threshold for eligibility is met, the participating candidate's principal committee shall receive payment for qualified campaign expenditures of: (i) eight dollars for each one dollar of matchable contributions, up to two thousand dollars in public funds per contributor, obtained and reported to the campaign finance board in accordance with the provisions of this chapter, with respect to any participating candidate for nomination for election or election to the office of mayor."

**ANSWER:**

Respondent-Defendant admits that Paragraph 149 quotes from Section 3-705(2)(a) of the

Campaign Finance Act.

**PARAGRAPH 150:**

Petitioner-Plaintiff Marietta Rozental exercised her constitutional right to contribute more than $250 to the Adams Campaign expecting that the Adams Campaign would receive $2,000 in campaign matching funds as a result of her contribution.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 150, except admits that Petitioner-Plaintiff Marietta Rozental

donated more than $250 to the Adams Campaign in 2023.

**PARAGRAPH 151:**

Petitioner-Plaintiff Joe Shanie exercised his constitutional right to contribute more than

$250 to the Adams Campaign, expecting that the Adams Campaign would receive $2,000 in campaign matching funds as a result of his contribution.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151, except admits that "Joseph Shamie" donated more than $250 to the Adams Campaign in 2022 and 2024.

**PARAGRAPH 152:**

Petitioner-Plaintiff Malcolm Adams exercised his constitutional right to contribute $100 to the Adams Campaign expecting that the Adams Campaign would receive $800 in campaign matching funds as a result of that contribution.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152, except admits that Petitioner-Plaintiff Malcolm Adams donated $100 to the Adams Campaign in 2023.

**PARAGRAPH 153:**

The expectation of campaign matching funds was an essential element of the exercise by Petitioners-Plaintiffs Marieta Rozental, Joe Shanie, and Malcolm Adams to exercise their constitutional rights to contribute to the Adams Campaign.

**ANSWER:**

Respondent-Defendant lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 153.

**PARAGRAPH 154:**

Free speech rights cannot be limited by vague and uncertain regulations.

**ANSWER:**

Respondent-Defendant lacks knowledge or information to admit or deny the allegations of

Paragraph 154 because no specific circumstances are provided.

**PARAGRAPH 155:**

The government "may serve its legitimate interests, but it must do so by narrowly drawn
regulations designed to serve those interests without unnecessarily interfering with First
Amendment freedoms."

**ANSWER:**

Respondent-Petitioner admits that Paragraph 155 quotes from *Village of Schaumburg v. Citizens*

*for a Better Env't,* 444 U.S. 620 (1980).

**PARAGRAPH 156:**

The CFB Rule purporting to permit the CFB to deny campaign matching funds where it
has "reason to believe" that the candidate "has violated federal and City laws" and "engaged in
conduct detrimental to the Program," is not narrowly drawn and does not unnecessarily interfere
with the First Amendment freedoms of Petitioner-Plaintiffs Marietta Rozental, Joe Shanie, and
Malcolm Adams to exercise their constitutional rights to contribute to the Adams Campaign.

**ANSWER:**

Respondent-Petitioner denies the allegation of Paragraph 156.

**PARAGRAPH 157:**

The CFB's decision to deny campaign matching funds to the Adams Campaign because it has
"reason to believe" that Mayor Adams "has violated federal and City laws" and "engaged in
conduct detrimental to the Program," violates the free speech rights of Petitioners-Plaintiffs
Marietta Rozental, Joe Shanie, and Malcolm Adams under both the United States Constitution
and the New York State Constitution.

**ANSWER:**

Respondent-Petitioner denies the allegation of Paragraph 157.

**PARAGRAPH 158:**

By reason of the CFB's unconstitutional rule and unconstitutional conduct, Petitioners-Plaintiffs are entitled to a declaration that the CFB' s denial of campaign matching funds to the Adams Campaign on the basis of an alleged "reason to believe" that Mayor Adams "has violated federal and City laws" and "engaged in conduct detrimental to the Program" violates the rights of Mayor Adams, the Adams Campaign, and Mayor Adams' supporters under the First Amendment to the United States Constitution and Article I, § 8 of the New York State Constitution and requires the Court to issue an injunction prohibiting the CFB from denying campaign matching funds to the Adams Campaign and ordering the CFB to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Petitioner denies the allegation of Paragraph 158.

**PARAGRAPH 159:**

Petitioners-Plaintiffs repeat and reallege all the allegations contained in all the preceding paragraphs as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 160:**

"The due process clause of the fourteenth amendment prohibits action by state officials which seriously undermine the fundamental fairness of the electoral process."

**ANSWER:**

Respondent-Defendant admits that Paragraph 160 quotes from *Duncan v. Poythress,* 657 F.2d

691 (5th Cir. 1981).

**PARAGRAPH 161:**

"[T]the very integrity of the [election] process rests on the assumption that clear rules will be established and that, once established, they will be enforced fairly, consistently, and without discrimination so long as they remain in force." "Due process protections extend beyond official action. Due process concerns arise when an official creates 'a serious, objective risk of actual bias."

**ANSWER:**

Respondent-Defendant admits that Paragraph 161 quotes from *Brown v. O'Brien,* 469 F.2d 563 (D.C. Cir. 1972) and *League of Women Voters of Fla. v. Scott,* 366 F. Supp. 3d 1311 (N.D. Fla 2018).

**PARAGRAPH 162:**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."

**ANSWER:**

Respondent-Defendant admits that Paragraph 162 quotes from *Grayned v. City of Rockford,* 408 U.S. 104 (1972).

**PARAGRAPH 163:**

The CFB Rule purporting to permit the CFB to deny campaign matching funds where it has "reason to believe" that the candidate "has violated federal and City laws" and "engaged in conduct detrimental to the Program" is not clearly defined; it is not defined at all.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 163.

**PARAGRAPH 164:**

The CFB's decision to deny campaign matching funds to the Adams Campaign because

it has "reason to believe" that Mayor Adams "has violated federal and City laws" and "engaged in conduct detrimental to the Program" fails to identify with any clarity the conduct that resulted in the CFB's decision to deny campaign matching funds to the Adams Campaign.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 164.

**PARAGRAPH 165:**

The CFB rule is unconstitutional on its face and deprives Petitioners-Plaintiffs of their constitutional right to due process of law.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 165.

**PARAGRAPH 166:**

The CFB rule is unconstitutional in its application to the Adams Campaign and deprives Petitioners-Plaintiffs of their constitutional right to due process of law.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 166.

**PARAGRAPH 167:**

By reason of the CFB's unconstitutional rule and its unconstitutional application to the Adams Campaign, Petitioners-Plaintiffs are entitled to a declaration that the CFB's denial of campaign matching funds to the Adams Campaign on the basis of an alleged "reason to believe" that Mayor Adams "has violated federal and City laws" and "engaged in conduct detrimental to the Program" violates the rights of Mayor Adams, the Adams Campaign, and Mayor Adams' supporters to due process of law under the United States Constitution and the New York State Constitution and requires the Court to issue an injunction prohibiting the CFB from denying campaign matching funds to the Adams Campaign and ordering the CFB to approve the request made by the Adams Campaign for campaign matching funds.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 167.

**PARAGRAPH 168:**

Petitioners-Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs with the same force and effect as if fully set forth here.

**ANSWER:**

Respondent-Defendant repeats and realleges each of its responses set forth above.

**PARAGRAPH 169:**

The CFB has, at various times, asserted that it was denying matching campaign funds to the Adams Campaign because Mayor Adams had failed to file his annual disclosure form and because the Adams Campaign had failed to respond, without explanation, to the CFB's request for documents and information.

**ANSWER:**

Respondent-Defendant denies the allegation of Paragraph 169, except admits that in various

notifications it informed the Adams Campaign that, among other reasons, it was not eligible for

matching funds because Mayor Adams had not filed his annual disclosure with the COIB and the

Adams Campaign failed to respond to a request for documents and information on a timely basis.

**PARAGRAPH 170:**

Neither basis for the CFB's denial is supported by the facts; both are arbitrary and capricious.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 170.

**PARAGRAPH 171:**

Mayor Adams filed his annual disclosure on April 14, 2025; he filed an amended disclosure on April 25, 2025.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 171, except admits that Mayor Adams made an incomplete filing on the night of April 14, 2025 and did not complete the disclosure to the satisfaction of the COIB until April 25, 2025.

**PARAGRAPH 172:**

Since Mayor Adams has filed his annual disclosure, there is no factual basis on which the CFB can find that the Adams Campaign is ineligible for campaign matching funds under Administrative Code §§ 3-703(l)(m) and 12-110 and Board Rules 3-0l(d)(ii)(D) and 3-05.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 172.

**PARAGRAPH 173:**

The Adams Campaign submitted the documents requested by the CFB on April 14, 2025.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 173.

**PARAGRAPH 174:**

The Adams Campaign explained that it could not submit the documents sooner because the documents were related to the pending indictment against Mayor Adams.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 174, except admits that on December 5, 2025, counsel for the Adams Campaign left a voicemail for the Chair of the CFB stating that they would not be responding to the request because of the pending indictment.

**PARAGRAPH 175:**

The indictment was dismissed on April 2, 2025.

**ANSWER:**

Respondent-Petitioner admits the allegations of Paragraph 175.

**PARAGRAPH 176:**

The Adams Campaign submitted the documents on April 14, 2022.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 176.

**PARAGRAPH 177:**

An administrative determination that is inconsistent with the facts is arbitrary and capricious.

**ANSWER:**

Respondent-Defendant lacks knowledge or information to admit or deny the allegations of Paragraph 177 because no specific circumstances are provided.

**PARAGRAPH 178:**

The CFB's determination that the Adams Campaign is ineligible for campaign matching funds under Administrative Code §§ 3-703(l)(m) and 12-110 and Board Rules 3-0l(d)(ii)(D) and 3-05 is arbitrary and capricious and must be annulled.

**ANSWER:**

Respondent-Defendant denies the allegations of Paragraph 178.

**PARAGRAPH 179:**

Petitioners-Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs with the same force and effect as if fully set forth here.

**ANSWER:**

Paragraph 179 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 180:**

Chapter 46, § 1053 of the New York City Charter requires the CFB to publish a voter guide in print and online for each contested election for, among other offices, Mayor.

**ANSWER:**

Paragraph 180 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 181:**

Chapter 46, § 1053(d) of the New York City Charter to promulgate "such rules as it deems necessary . . . to fully, fairly and impartially inform the public about the issues and candidates appearing on the ballot."

**ANSWER:**

Paragraph 181 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 182:**

Section 16-02(b)(iii)(A) of the rules promulgated by the CFB provides that "[o]nly registered candidates who have met the requirements of this chapter and who are on the ballot in a contested primary will have their candidate print and video statements included in primary election editions of the Voter Guide."

**ANSWER:**

Paragraph 182 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 183:**

Section 16-02(b)(iii)(B) of the rules promulgated by the CFB provides that "[o]nly registered candidates who have met the requirements of this chapter and who are on the general election ballot will have their candidate print and video statements included in general election editions of the Voter Guide."

**ANSWER:**

Paragraph 183 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 184:**

The voter guide published by the CFB on or about May 15, 2025 erroneously included a statement that Mayor Adams was candidate for the nomination of the Democratic Party in the June 2025 Democratic Party primary.

**ANSWER:**

Paragraph 184 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 185:**

The CFB knew or should have known by April 4, 2025 that Mayor Adams would not be a candidate for the Democratic Party nomination for mayor in the June 2025 Democratic Primary.

**ANSWER:**

Paragraph 185 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 186:**

The CFB misstated the nature of Mayor Adams' candidacy either falsely or through its gross negligence.

**ANSWER:**

Paragraph 186 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 187:**

The CFB's misstatement causes significant harm to Mayor Adams, the Adams Campaign and Mayor Adams' supporters by falsely stating that Mayor Adams is a candidate for the Democratic Party nomination for mayor in the June 2025 Democratic Primary.

**ANSWER:**

Paragraph 187 does not require a response as it relates to the thirteenth cause of action, which

has been discontinued.

**PARAGRAPH 188:**

The CFB's error with respect to Mayor Adams is not the only error the CFB made with respect to the voter guide. The CFB also listed four other non-candidates in the Democratic Party primary election and mis-stated that there is a Republican Party primary when there is none.

**ANSWER:**

Paragraph 188 does not require a response as it relates to the thirteenth cause of action, which has been discontinued.

**PARAGRAPH 189:**

The CFB has not corrected its errors.

**ANSWER:**

Paragraph 189 does not require a response as it relates to the thirteenth cause of action, which has been discontinued.

**PARAGRAPH 190:**

Petitioners-Plaintiffs are entitled to judgment declaring that the CFB's voter guide for the June 2025 Democratic Party primary election for the public office of Mayor of the City of New York is incorrect and an order enjoining and directing the CFB to issue, at least two weeks prior to the primary election, a new voter guide stating correctly that Mayor Adams is not a candidate for the Democratic Party nomination for the public office of Mayor of the City of New York in the June 2025 Democratic Primary.

**ANSWER:**

Paragraph 190 does not require a response as it relates to the thirteenth cause of action, which has been discontinued.

**PARAGRAPH 191:**

Petitioners-Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs with the same force and effect as if fully set forth here.

**ANSWER:**

Paragraph 191 does not require a response as it relates to the fourteenth cause of action, which has been discontinued.

**PARAGRAPH 192:**

Chapter 46, § 1053(a)(3) of the New York City Charter requires that the voter guide the CFB is required to publish contain "information on each candidate."

**ANSWER:**

Paragraph 192 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 193**

Mayor Adams is a candidate in the general election for the public office of Mayor of the City of New York.

**ANSWER:**

Paragraph 193 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 194:**

Chapter 46, § 1053(a)(3) requires that the CFB's voter guide contain information about Mayor Adams.

**ANSWER:**

Paragraph 194 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 195:**

Section 16-02(b)(iii)(B) of the CFB's rules provide, however, that "[o]nly registered candidates who have met the requirements of this chapter and who are on the general election ballot will have their candidate print and video statements included in general election editions of the Voter Guide."

**ANSWER:**

Paragraph 195 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 196:**

The CFB has no authority to adopt rules inconsistent with the requirements of the New
York City Charter.

**ANSWER:**

Paragraph 196 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 197:**

Nothing in the New York City Charter authorizes the CFB to limit candidate statements in the
voter guide to those candidates to "registered candidates who have met the requirements of this
chapter."

**ANSWER:**

Paragraph 197 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 198:**

That portion of section 16-02(b)(iii)(B) of the CFB's rules which provides that "[o]nly registered
candidates who have met the requirements of this chapter and who are on the general election
ballot will have their candidate print and video statements included in general election editions of
the Voter Guide" is invalid, illegal and unenforceable.

**ANSWER:**

Paragraph 198 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 199:**

The CFB is likely to refuse to include Mayor Adams' statement in the voter guide for the general election for the same reasons that it has denied the Adams Campaign and Mayor Adams campaign matching funds.

**ANSWER:**

Paragraph 199 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 200:**

Refusing to include Mayor Adams' statement in the voter guide for the general election would be illegal, arbitrary and capricious.

**ANSWER:**

Paragraph 200 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 201:**

Refusing to include Mayor Adams' statement in the voter guide for the general election would deprive Mayor Adams, the Adams Campaign and Mayor Adams' supporters their rights under the First and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the New York State Constitution.

**ANSWER:**

Paragraph 201 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

**PARAGRAPH 202:**

Petitioners-Plaintiffs are entitled to a judgment declaring that the CFB must identify Mayor Adams as a candidate for the public office of Mayor of the City of New York and publish his candidate print statement and photograph in the printed and online editions of the voter guide it publishes for the November 2025 General Election and publish his candidate video-recorded statement in the video and online editions of the voter guide it publishes for the November 2025 General Election, and directing and enjoining the CFB to do so.

**ANSWER:**

Paragraph 202 does not require a response as it relates to the fourteenth cause of action, which

has been discontinued.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Petitioners fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Petitioners' claims are untimely with respect to the December 2024 and January 2025

nonpayment determinations pursuant to CPLR § 217(1).

### THIRD AFFIRMATIVE DEFENSE

Petitioners failed to exhaust their administrative remedies and may not raise factual or legal

claims not previously raised before the Board.

## COUNTER STATEMENT OF FACTS

Respondent-Defendant adopts and incorporates the attached Declaration of Paul S. Ryan,

Executive Director of the New York City Campaign Finance Board, as Respondent-Defendant's

Counter Statement of Facts.


Dated: June 23, 2025
     New York, NY


                    LANKLER SIFFERT & WOHL LLP

                    By:    /s/ Douglass B. Maynard
                             Douglass B. Maynard
                             Ramya Kasturi
                             Charlotte F. Blatt, *pro hac vice admission pending*

                             1185 Avenue of the Americas
                             New York, NY 10036
                             (212) 921-8399

                             *Counsel for Respondent-Defendant New York City Campaign Finance Board*