UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In the Matter of

ERIC ADAMS 2025, ERIC ADAMS, SHARON
ADAMS, as Treasurer of Eric Adams 2025,
MARIETTA ROZENTAL, JOE SHANIE, and
MALCOLM ADAMS,

                              Petitioners-Plaintiffs,

    – against –

NEW YORK CITY CAMPAIGN FINANCE
BOARD,

                            Respondent-Defendant.

Docket No. 25-cv-3380 (NGG)

---

**PETITIONERS-PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION FOR JUDGMENT ON THE PLEADINGS AND IN
SUPPORT OF THE AMENDED PETITION-COMPLAINT**

---

**ABRAMS FENSTERMAN, LLP**
*Attorneys for Petitioners-Plaintiffs*
1 Metrotech Center, Suite 1701
Brooklyn, New York 11201
Telephone: 718-215-5300

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 4

STANDARD OF REVIEW ........................................................................................................... 6

ARGUMENT ............................................................................................................................. 6

    I. The CFB's "reason to believe" standard is illegal, arbitrary, and capricious .......................... 7

        A. The CFB has no authority to establish standards of eligibility for
           campaign matching funds that are not found in the Campaign Finance Act. ............... 8

        B. Even if the CFB had the authority to adopt it as a standard for denying campaign
           matching funds, "reason to believe" is not a lawful basis for a CFB determination. ... 10

        C. By denying campaign matching funds to the Campaign, the CFB denied
           the Campaign and its supporters their rights to free speech, due process,
           and equal protection ..................................................................................................... 13

           1.   The amended petition-complaint states a free speech claim. .................................. 15

           2.   The amended petition-complaint states a due process claim.................................... 19

           3.   The amended petition-complaint states an equal protection claim. ........................ 21

    II. The CFB's denial of campaign matching funds to the Adams Campaign based on a
       politically-motivated, now-dismissed indictment of Mayor Adams is arbitrary and
       capricious........................................................................................................................... 23

        A. An indictment is not a lawful basis for administrative action........................................ 23

        B. The Adams indictment, in particular, is a politically-motivated act that cannot
           lawfully be relied on to establish any fact whatsoever................................................. 25

    III. The CFB's determination must be annulled for the additional reason that it was
        made in violation of the  New York City Administrative Procedure Act ......................... 26

    IV. The CFB's remaining reasons for denying campaign matching funds to the Adams
        Campaign are arbitrary and capricious pretexts for the CFB's otherwise illegal
        determination .................................................................................................................... 27

    A. Mayor Adams timely filed his financial disclosure statement. ....................................... 27

    B. The CFB's denial of campaign matching funds to the Adams Campaign on
       the ground that the campaign had failed to respond to the CFB's request for
       information is false, disingenuous, illegal, arbitrary, and capricious............................ 31

CONCLUSION..................................................................................................................... 34

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*300 Gramatan Ave. Assocs. v. State Div. of Hum. Rts.*,
    45 N.Y.2d 176 (1978) ............................................................................................. 11, 13

*Aponte v. Olatoye*,
    30 N.Y.3d 693 (2018) ............................................................................................... 23

*Application of American Seminary of Bible*,
    280 A.D. 792 (2d Dep't 1952) ................................................................................. 26

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
    564 U.S. 721 (2011) ............................................................................................ 14, 15

*Bank of New York v. First Millennium, Inc.*,
    607 F.3d 905 (2d Cir. 2010) ...................................................................................... 6

*Barry v. O'Connell*,
    303 N.Y. 46 (1951) .................................................................................................. 26

*Boreali v. Axelrod*,
    71 N.Y.2d 1 (1987) .................................................................................................... 8

*Central Sav. Bank v. City of New York*,
    280 N.Y. 9 (1939) ............................................................................................... 14, 17

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ................................................................................................. 19

*City of Lakewood v. Plain Dealer Publishing. Co.*,
    486 U.S. 750 (1988) ................................................................................................. 16

*Coffin v. United States*,
    156 U.S. 432 (1895)…………………………………………………………….. 23

*Costco Wholesale Corp. v. New York State Liquor Auth.*,
    125 A.D.3d 775 (2d Dep't 2015) .............................................................................. 33

*Cunney v. Bd. of Trustees of Village of Grand View, NY*,
    660 F.3d 612 (2d Cir. 2011) ............................................................................... 20, 21

*De Jonge v. State of Oregon*,
    299 U.S. 353 (1937) ................................................................................................. 20

*DeMuro v. Bd. of Educ. of Yonkers City Sch. Dist.,*
  631 N.Y.S.2d 749 (1995) ........................................................................... 9

*Dumas v. City of Dallas,*
  648 F. Supp. 1061 (N.D. Tex. 1986) ....................................................... 18

*Elser v. Waters,*
  56 N.Y.2d 306 (1982) ............................................................................... 14

*Fellowmen Cmty. Dev. Corp. v. New York State Liquor Auth.,*
  219 A.D.2d 871 (4th Dep't 1995) ............................................................ 24

*Fernades v. Limmer,*
  663 F.2d 619 (5th Cir. Unit A 1981) ...................................................... 16

*Field Day, LLC v. County of Suffolk,*
  463 F.3d 167 (2d Cir. 2006)...................................................................... 19

*Gerald HH. v. Carrion,*
  130 A.D.3d 1174, (3d Dep't 2015)........................................................... 24

*Gerson v. New York City Campaign Finance Board,*
  171 A.D.3d 648 (1st Dep't. 2019) ........................................................... 31

*Green Party of Conn. v. Garfield,*
  616 F.3d 189 (2d Cir. 2010)...................................................................... 15

*Harbolic v. Berger,*
  43 N.Y.2d 102 (1977) ................................................................................. 9

*Hicks v. Comm'r of Social Security,*
  909 F.3d 786 (6th Cir. 2018) ................................................................... 18

*Hill v. Colorado,*
  530 U.S. 703 (2000)................................................................................... 20

*Hu v. City of New York,*
  927 F.3d 81 (2d Cir. 2019)............................................................ 21, 22, 23

In *Matter of Mossa v. New York City Campaign Finance Board,*
  41 A.D.3d 178 (1st Dep't 2007) .............................................................. 10

*In re New York Water Service Corp.,*
  283 N.Y. 23 (1940).................................................................................... 26

*Jones v. Berman,*
  37 N.Y.2d 42 (1975) ......................................................................................... 9

*Kastigar v. United States,*
  406 U.S. 441 (1972) ........................................................................................ 32

*L-7 Designs, Inc. v. Old Navy, LLC,*
  647 F.3d 419 (2d Cir. 2011) ........................................................................... 22

*LeadingAge New York, Inc. v. Shah,*
  32 N.Y.3d 249 (2018) .................................................................................... 8, 9

*Liu v. New York City Campaign Finance Board,*
  2015 WL 1514904 (S.D.N.Y. March 32, 2015) ............................................. 17

*Looney v. Black,*
  703 F.3d 701 (2d Cir. 2012) ........................................................................... 20

*MacDonald v. Safir,*
  206 F.3d 183 (2d Cir. 2000) ............................................................. 16, 17, 19

*Matter of Murphy v. New York State Div. of Hous. & Community Renewal,*
  21 N.Y.3d 649 (2013) ..................................................................................... 33

*Matter of NYC Dept. of Envt'l. Protection v. New York City Civ. Serv. Commn.,*
  78 N.Y.2d 318 (1991) ....................................................................................... 9

*Mercer v. Schriro,*
  337 F. Supp.3d 109 (D. Conn. 2018) .............................................................. 20

*Metropolitan Taxicab Bd. of Trade v. New York City Taxi & Limousine Comm'n,*
  18 N.Y.3d 329 (2011) ..................................................................................... 26

*New York State Superfund Coal., Inc. v. New York State Dep't of Env't Conservation,*
  75 N.Y.2d 88 (1989) ......................................................................................... 8

*New York Statewide Coal. of Hisp. Chambers of Com. v. New York City Dep't of Health & Mental Hygiene,*
  23 N.Y.3d 681 (2014) ....................................................................................... 9

*Ognibene v. Parks,*
  671 F.3d, 174 (2d Cir. 2011) .......................................................................... 15

*Patel v. Contemp. Classics of Beverly Hills,*
  259 F.3d 123 (2d Cir. 2001) ............................................................................. 6

*Payton v. New York*,
    445 U.S. 573 (1980) ................................................................ 11

*Peckham v. Calogero*,
    12 N.Y.3d 424 (2009) .............................................................. 33

*Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1*,
    34 N.Y.2d 222 (1974) ................................................. 11, 23, 33

*People ex rel. Arcara v. Cloud Books, Inc.*,
    68 N.Y.2d 553 (1986) .............................................................. 14

*People v. Miller*,
    91 N.Y.2d 372 (1998) ................................................. 13, 23, 24

*People v. Morrison*,
    195 N.Y. 116 (1909) ................................................................ 13

*People v. Razezicz*,
    206 N.Y. 249 (1912) ................................................................ 23

*Ridge, Inc. v. New York State Liquor Auth.*,
    257 A.D.2d 625 (2d Dep't 1999) ........................................... 24

*Rosario v. Mun. Hous. Auth. for City of Yonkers*,
    141 A.D.3d 664 (2d Dep't 2016) ........................................... 12

*Rynasko v. New York Univ.*,
    64 F.4th 186 (2d Cir. 2023) .................................................... 22

*Simon Green, Inc. v. New York State Division of Housing and Community Renewal*,
    228 A.D.3d 670 (2d Dep't 2024) ........................................... 33

*State v. Sinisgalli*,
    11 A.D.3d 886 (4th Dep't 2004) ............................................ 32

*Thibodeau v. Portuondo*,
    486 F.3d 61 (2d Cir. 2007) ..................................................... 20

*Tot v. United States*,
    319 U.S. 463 (1943) ................................................................ 24

*U.S. v. Calandra*,
    414 U.S. 338 (1974) ................................................................ 18

*United States v. Bohannon*,
 824 F.3d 242 (2d Cir. 2016)........................................................................ 11

*Vaher v. Town of Orange,*
 916 F. Supp.2d 404 (S.D.N.Y. 2013)........................................................ 20

*Vitro v. Hanlon,*
 77 A.D.2d 621 (2d Dep't 1980) ................................................................ 12


Statutes
42 USC § 1983 .............................................................................................. 1


Rules

CPLR 7803(4) ............................................................................................... 10

Fed. R. Civ. P. 12(c) .................................................................................. 1, 6

Fed. R. Civ. P. 12(b)(6)............................................................................ 6, 19


Regulations

11 C.F.R. § 111.10(a)................................................................................... 11

11 C.F.R. §§ 111.17, 111.19 ...................................................................... 11

11 C.F.R. §§ 111.6-111.7............................................................................ 11

**PRELIMINARY STATEMENT**

Petitioners-Plaintiffs Eric Adams 2025, Eric Adams, Sharon Adams, Marietta Rozental, Joe Sanie and Malcolm Davis (collectively the "Campaign"), respectfully submit this memorandum of law in opposition to the motion by Respondent-Defendant the New York City Campaign Finance Board ("CFB") pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing the Campaign's petition pursuant to article 78 of the New York Civil Practice Law and Rules ("CPLR") and action pursuant to 42 USC § 1983, and in support of the relief they demand in the petition-complaint.

**SUMMARY OF ARGUMENT**

The CFB denied $3,439,168 in campaign matching funds to the Campaign on the basis of an eligibility rule it created. The rule makes campaigns ineligible for campaign matching funds even if they satisfy the statutory standards if the CFB has "reason to believe" that "the candidate has committed a violation of the Act or these rules." ECF No. 11-2, Exhibit 2 at 16. "Reason to believe," however, is not a legitimate standard for administrative action. It certainly cannot satisfy New York's CPLR article 78, which requires that arbitrary and capricious decisions that have no basis in facts in the record be annulled. And the discretion it gives the CFB to discriminate among campaigns makes it constitutionally impermissible.

The First and Fourteenth Amendments protect the rights of citizens, individually and collectively, to campaign for political office on equal terms. The CFB's "reason to believe" standard permits a governmental agency – the CFB – to limit their exercise of that right arbitrarily and without any basis in fact. The citizens who supported Mayor Adams with donations expected that their contributions would be matched and their money would have the same impact on the political process as everyone else's. It hasn't, solely because of the CFB's "reason to believe." The

standard violates the First and Fourteenth Amendments.

There are no facts in the record to support the CFB's determination. Its sole basis for denying campaign matching funds to the Campaign is the September 2024 indictment of Mayor Adams that has now been dismissed without ever proceeding to trial. An indictment is not evidence. It is an allegation. In America, even a person who has been indicted is presumed innocent until proven guilty and the case against Mayor Adams never went to trial. Neither the indictment, nor any other documents on which the CFB now purports to have based its decision, alleges any fact which, if proven, would have established that Mayor Adams or anyone else now involved with the Adams Campaign violated any campaign finance law.

The impact of the CFB's decision on the Campaign cannot be understated. According to the CFB's April 15, 2025 summary, the Adams Campaign would be entitled to receive $3,439,168 in campaign matching funds but for the CFB's "reason to believe." The indictment mentions only $51,500 in allegedly illegal contributions to the 2021 Committee, of which the 2021 Committee had refunded $17,300 before the indictment, and another $6,300 in allegedly illegal contributions to the 2025 Committee. The match claims associated with those contributions (not all of which were eligible for matching), if accepted, would have resulted in approximately $40,000 of public funds to the 2021 Committee, less than 0.4% percent of the $10,135,914 in total public funds received by the 2021 Committee, and approximately $6,000 in public funds to the 2025 Committee, which is less than 0.2% of the $3,439,168 in public funds the CFB determined in April are preliminarily valid but nonetheless has denied the 2025 Committee.[1]

The CFB's other purported grounds for denying campaign matching funds to the Adams

---

[1] The Adams Campaign has since raised an additional $155,918 in eligible contributions which, if validated by the CFB, will result in $1,247,344 in campaign matching funds.

Campaign – Mayor Adams' annual financial disclosure and the Campaign's response to the CFB's demand for information – are equally invalid and are merely attempts by the CFB to create a legitimate basis for its decision where none exists. The Conflicts of Interest Board has confirmed, and the CFB acknowledges, that Mayor Adams filed a complete disclosure form before the CFB made its final decision to deny campaign matching funds. The Adams Campaign responded to the CFB staff's request for information as soon as the indictment was dismissed. The CFB does not dispute that now, except to say that the response was incomplete because it did not state that Mayor Adams had searched his files for responsive documents. But the CFB never asked Mayor Adams for anything; the request was to the Campaign and its predecessor, Eric Adams 2021. The CFB's present position thus reveals the request for information for what it has always been – a pretext to create a procedural argument for taking the action the CFB intended to take all along.

The record reflects that the CFB staff decided in November 2024, before even making an inquiry of the Adams Campaign, that under the "reason to believe" standard the indictment gave it a colorable basis to deny campaign matching funds to the Adams Campaign. The CFB staff did not even ask the Adams Campaign for any information until after it had decided that it had "reason to believe." The CFB fell in line the following month. Had the CFB read the indictment, it would have realized that there are no facts in the indictment which, even if proven, would have established that Mayor Adams or anyone presently involved in the Adams Campaign participated in any campaign finance violations. Everything the CFB has cited since as a basis for denying campaign matching funds has been for the purpose of justifying that pre-ordained conclusion. When the Adams Campaign understandably responded that it could not provide the requested documents while the criminal prosecution was pending, the CFB used that refusal as a basis for denying campaign matching funds under another provision of its rules, and continues to rely on the failure

to respond, even though the Adams Campaign did respond fully to the request as soon as he indictment was dismissed. The CFB's argument that the response was not timely, even though the CFB received it 27 days before the CFB made its final determination, completely ignores that its rules provide that late submissions may affect payment, but are not a basis for denying eligibility.

The CFB similarly misused Mayor Adams's annual disclosure as a pretext for denying campaign matching funds to the Adams Campaign. The Conflicts of Interest Board (COIB) confirmed on April 25, 2025 that Mayor Adams had filed his disclosure form and the COIB had accepted it. The CFB thus knew that the disclosure requirement had been satisfied when its Chair purported to reject the Adams Campaign's appeal on May 2, 2025 and when the CFB actually denied that appeal on May 12, 2025. Instead of rationally accepting the fact that the disclosure had been filed, the CFB persisted in its irrational plan to ignore facts for the purpose of sustaining the impermissible conclusion it had reached.

New York law requires that an administrative determination be rational and based on facts in the record. The CFB's decision to deny campaign matching funds to the Adams Campaign was not. It was made on the basis of an illegally-adopted rule, a misunderstanding of the nature of an indictment, a misreading of the substance of that indictment, and a violation of procedural requirements. It must be set aside, therefore, under state law.

### STATEMENT OF FACTS

Mayor Adams was indicted on September 26, 2024. Ryan Declaration, ECF No. 11-1, ¶ 16. By November 15, 2024, the CFB staff had already decided that "there is reason to believe that the Campaigns committed violations of various federal statutes, Campaign Finance Act provisions, and Board Rules, which would make the 2025 Campaign ineligible to receive a public funds payment on December 16, 2024." ECF No. 11-2, Exhibit 4 at 1. The CFB endorsed that conclusion on December 16, 2024. *Id.* Exhibits 6, 8. The purpose of everything the CFB did after that was to

justify the conclusion it had already reached.

CFB Director of Special Compliance Jesse Schaffer made the CFB's first demand for information on November 15, 2024. *Id.* Exhibit 4. United States District Judge Dale Ho dismissed the indictment with prejudice on April 2, 2025. *Id.* Exhibit 21. The Adams Campaign responded to the CFB's document request on April 14, 2025. *Id.* Exhibit 22.

The CFB denied the Campaign's requests for matching funds on December 18, 2024, citing the Campaign's "failure to respond to a request for information [as] a basis for ineligibility for public funds." *Id.* Exhibit 8 at 2. Its January 16, 2025 and February 18, 2025 followed suit, Exhibits 10, 11, and its March 17, 2025 denial did not address the failure to respond to the CFB's request at all.[2] *Id.* Exhibits 10-13. In its initial April 15, 2025 denial, the CFB relied only on Mayor Adams' failure to file his annual disclosure statement. *Id.* Exhibit 23. Later, it added "preliminary findings of substantial violations." *Id.* Exhibit 24. Then, in its third iteration of its rationale, the CFB cited "reason to believe" and failure to respond to the CFB's November 15, 2024 request, even while acknowledging that the campaign had submitted its response but stating that the CFB had not reviewed it. *Id.* Exhibit 25.

After the Campaign requested reconsideration, the CFB counsel, apparently speaking for the Chair in his purported authority to act on behalf of the CFB, emailed Mr. Pitta on May 2, 2025 to state that the response was untimely and that "[t]he campaign did not provide an explanation for the delay nor state reasons why the Board should accept this late demonstration of compliance for the April 15 payment," ECF 11-2, Exhibit 30, ignoring the obvious explanation for the late submission, that the indictment had been dismissed only 12 days earlier. The CFB, purporting to

---

[2] The March 17, 2025 determination is the only time the CFB raised the difference between reported receipts and documented receipts as a basis for denying campaign matching funds. It is not among the issued raised in the April 15, 2025 determination. ECF 12-1 at 6.

ratify the Chair's unauthorized action, rejected the Campaign's appeal on May 12, 2025. It now argues that the Adams Campaign's April 14, 2025 response was insufficient because it "does not say that Mayor Adams himself had reviewed his records for responsive documents," ECF No. 11-1 ¶ 48, ignoring the fact that the CFB had never made a request of Mayor Adams.

Mayor Adams filed his annual financial disclosure statement on April 14, 2025. ECF No. 11-2, Exhibit 29(A). Mayor Adams filed an amended disclosure on April 25, 2025. The Conflicts of Interest Board accepted his filing as complete no later than 4:40 p.m. on April 25, 2025. *Id.* Exhibit 28. All of this was, therefore, duly before Chair Schaffer on May 2, 2025, when he purportedly denied the Adams Campaign's petition for reconsideration. More important, it was before the CFB when it met on May 12, 2025 and actually denied that application.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is determined by the same standard as a Rule 12(b)(6) motion, and therefore, the court must accept as true all factual allegations in the non-moving party's pleadings and draw all reasonable inferences in favor of the party opposing the motion. *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Accordingly, a complaint will survive a Rule 12(c) motion if the pleading contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bank of New York v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir. 2010) (citations omitted). For the reasons discussed below, the Amended Petition-Complaint satisfies this standard.

## ARGUMENT

The CFB's relentless effort to deny campaign matching funds to the Campaign is arbitrary,

capricious, and illegal, and violates the Campaign's right to participate on an equal basis with all other candidates in the mayoral campaign. The agency's actions have effectively made it impossible for Mayor Adams to compete in the Democratic primary election and unduly burdens his participation in the general election on the same terms as other candidates, achieving the opposite of the CFB's stated purpose – to promote democracy, engage voters, and administer the Campaign Finance Act fairly in accordance with the law as the City Council enacted it.

The CFB's action was based upon a flawed, factually vacant, and politically motivated former indictment which has since been dismissed with prejudice after being discredited by the very entity that filed it – the United States Department of Justice. The CFB's reliance on the indictment is an insult to the fundamental American principle that a person is innocent until proven guilty. Further, the "reason to believe" standard that the CFB used to deny campaign matching funds to the Campaign, without making any factual determination, and based solely on a dismissed indictment's unproven allegations, is illegal, arbitrary and capricious because: (1) it has no basis in the Campaign Finance Act; and (2) was beyond the authority of the CFB to create or to enforce.

As a result, the CFB's determination to deny the Campaign matching public funds is arbitrary and capricious, an abuse of discretion, made in violation of lawful procedure, affected by an error of law, and it therefore must be vacated and set aside pursuant to CPLR article 78.

## I

### The CFB's "reason to believe" standard is illegal, arbitrary, and capricious

"Reason to believe that a campaign has engaged in conduct detrimental to the matching funds program, in violation of law" is not a lawful basis for an administrative determination. The CFB had no authority to adopt it, it cannot be lawful basis under New York law for a CFB determination and it unconstitutionally limits of New Yorkers to participate in the electoral process in violation of the First and Fourteenth Amendments.

## A. The CFB has no authority to establish standards of eligibility for campaign matching funds that are not found in the Campaign Finance Act

The CFB is an administrative agency, not a legislative body. "Agencies, as creatures of the Legislature, act pursuant to specific grants of authority conferred by their creator." *LeadingAge New York, Inc. v. Shah,* 32 N.Y.3d 249, 259–60 (2018) (citations and internal quotations omitted). "An agency's authority must coincide with its enabling statute." *New York State Superfund Coal., Inc. v. New York State Dep't of Env't Conservation*, 75 N.Y.2d 88, 92 (1989). The legislature makes policy decisions through the enactment of a law, while the agency is responsible for implementing the law, which it may accomplish by promulgating rules and regulations consistent with its enabling legislation. *Id.* However, "[i]f an agency promulgates a rule beyond the power it was granted by the legislature, it usurps the legislative role and violates the doctrine of separation of powers." *Id.* (citations and internal quotations omitted); see *Boreali v. Axelrod,* 71 N.Y.2d 1, 11 (1987) ("A governmental agency exceeds the scope of its delegated authority in promulgating a regulation when it engages in impermissible 'legislative policy-making,' as opposed to permissible 'administrative rule-making'".

The CFB's authority to promulgate rules is defined by the Campaign Finance Act: "The board shall have the authority to promulgate such rules and regulations and provide such forms as it deems necessary **for the administration of this chapter**." Campaign Finance Act § 3-708(8) (emphasis supplied). "Reason to believe that a campaign has engaged in conduct detrimental to the matching funds program, in violation of law" is not an administrative standard, it is an eligibility standard. It was, therefore, beyond the authority of the CFB to adopt.

The "reason to believe" standard the CFB adopted is not among the standards defined by the Campaign Finance Act. *See* Administrative Code § 3-703. The CFB adopted it by rule CFB Rule 3-10 (d)(ii)(B). The CFB does not even try to disguise that. The rule is placed in "Chapter 3:

Eligibility to Receive Public Funds" and is entitled "Discretionary Ineligibility." But adding to the statutorily defined standards of eligibility is not "necessary for the administration" of the Campaign Finance Act.

The Campaign Finance Act, not the CFB, defines the standards of eligibility for campaign matching funds. The CFB has no authority to add to or subtract from those statutory standards. Where the law establishes eligibility standards, the administrative agency's only role is to apply the standard established by law. *LeadingAge, supra*. The CFB's adoption of a rule allowing it to deny campaign matching funds on the ground that the CFB has "reason to believe that a campaign has engaged in conduct detrimental to the matching funds program, in violation of law" therefore, is *ultra vires* and illegal and its determination to deny funds to the Adams Campaign based on that rule must be annulled. *See Harbolic v. Berger*, 43 N.Y.2d 102, 109, (1977) ("Administrative agencies can only promulgate rules to further the implementation of the law") (quoting *Jones v. Berman*, 37 N.Y.2d 42, 53 (1975)).

It is the duty of the courts to ensure that administrative agencies do not act in excess of their statutory authority. *See Matter of NYC Dept. of Envt'l. Protection v. New York City Civ. Serv. Commn.*, 78 N.Y.2d 318 (1991). Judicial action is required when the agency has acted illegally, unconstitutionally or in excess of its jurisdiction and the court must step in if an agency acts in violation of enabling legislation. *Id. See also New York Statewide Coal. of Hisp. Chambers of Com. v. New York City Dep't of Health & Mental Hygiene*, 23 N.Y.3d 681, 692 (2014) (Board of Health rule implemented to curtail the consumption of sugary soda overstepped the boundaries of its lawfully delegated authority and engaged in policy-making, which is reserved to the legislative branch, and therefore violated the state principle of separation of powers); *DeMuro v. Bd. of Educ. of Yonkers City Sch. Dist.*, 631 N.Y.S.2d 749, 750 (1995) (decision was invalid because the agency

acted in excess of its statutory authority in a disciplinary proceeding).

In *Matter of Mossa v. New York City Campaign Finance Board*, 41 A.D.3d 178 (1st Dep't 2007), the Appellate Division, First Department, held that the CFB had exceeded its authority in promulgating a rule prohibiting the use of campaign matching funds to reimburse third parties for expenditures made on behalf of the campaign. As that court said:

> The New York City Campaign Finance Act (Administrative Code § 3–701 *et seq.*) prohibits the use of public funds for eight categories of expenditures (§ 3–704[2]). Reimbursement for advances is not one of these categories, and nothing in the Act supports respondent's contention that the list is "non-exhaustive" or that the reimbursement of an advance by a campaign committee is not an expenditure by the committee.

41 A.D.3d at 179. The situation here is no different.

Here, the CFB acted beyond its authority by promulgating the rule allowing it to deny campaign matching funds where it has "reason to believe that a campaign has engaged in conduct detrimental to the matching funds program, in violation of law." Since there is no statutory authority for the CFB's rule, the CFB acted illegally, arbitrarily and capriciously when it denied matching campaign funds to the Adams Campaign on the basis of that rule. Its decision must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

### B. Even if the CFB had the authority to adopt it as a standard for denying campaign matching funds, "reason to believe" is not a lawful basis for a CFB determination

An administrative determination is lawful, and not arbitrary and capricious, only where it is based on facts in the record that provide "substantial evidence" to support the determination. CPLR 7803(4).[3] Substantial evidence "means such relevant proof as a reasonable mind may accept

---

[3] The CFB quibbles with the Campaign's argument that the "substantial evidence" test should be applied here, and instead maintains that the arbitrary and capricious standard governs. *See* ECF No. 12-1, CFB BR. at 15-16. As it concedes, however, it is relying on a distinction without a difference. The CFB acknowledges that for the purpose of

as adequate to support a conclusion or ultimate fact. Essential attributes are relevance and a probative character). Marked by its substance--its solid nature and ability to inspire confidence, substantial evidence does not rise from bare surmise, conjecture, speculation or rumor." *300 Gramatan Ave. Assocs. v. State Div. of Hum. Rts.*, 45 N.Y.2d 176, 180 (1978) (internal citations omitted). "In the final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably probatively and logically." *Id.*

"Reason to believe" is not "substantial evidence." Arising in *Payton v. New York*, 445 U.S. 573 (1980), as a standard for a warrantless arrest inside a residence, the "reason to believe" standard is, as the Supreme Court has stated, "amorphous." 445 U.S. at 600. As the Second Circuit has observed, "it is no more possible to articulate a precise meaning for 'reason to believe' as a standard . . . , than it is to afford precise meanings to standards such as "reasonable suspicion" or "probable cause." *United States v. Bohannon*, 824 F.3d 242, 254 (2d Cir. 2016).

The CFB's citation of the rules of the Federal Election Commission demonstrates the insufficiency of "reason to believe" as a standard for administrative action. Under those rules, no action is taken until Commission, after giving the respondent an opportunity to be heard and the Commission's General Counsel determines if there is "reason to believe" that there has been, or is about to be, a violation. 11 C.F.R. §§ 111.6-111.7. The Commission initiates an investigation only if it confirms that determination. 11 C.F.R. § 111.10(a). That leads to a determination of whether there is probable cause and, if appropriate, authorization to take civil action. 11 C.F.R. §§ 111.17,

article 78 adjudication, the substantial evidence and arbitrary and capricious standards are "fundamentally the same." *See id.* at 22 n.8 (quoting *Matter of Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1*, 34 N.Y.2d 222, 231 (1974)).

111.19. No substantive action is taken, however, on the basis of "reason to believe."

New York law administrative law is no different. Inconclusive evidence cannot support a finding of "substantial evidence." *Rosario v. Mun. Hous. Auth. for City of Yonkers*, 141 A.D.3d 664, 666 (2d Dep't 2016) (Housing Authority's determination that adult children helped subsidize the mother's apartment was not supported by substantial evidence, where children were registered to vote at mother's address, but their driver's licenses bore a different addresses). Further, an allegation of illegal activity is not "substantial evidence" where there is no proof that the alleged crime was committed. *See Vitro v. Hanlon*, 77 A.D.2d 621, 621 (2d Dep't 1980). In *Vitro,* a town board of police commissioners charged a police sergeant with illegal use of motor vehicle license plates. *Id.* While there was evidence that the sergeant's license plates were questionable, there was no "showing that petitioner had actually operated the motor vehicle with the questionable plates attached." *Id.* The charge against the sergeant was therefore annulled because it was not based upon substantial evidence. *Id.*

The CFB's articulated basis for denying the request of the Adams Campaign for campaign matching funds is that "there is reason to believe the Adams Campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules." But a mere "reason to believe" cannot be "substantial evidence." A "reason to believe" does not need to be based on reality or the truth. One could have reason to believe in one religious faith over another, that vaccines cause autism, that heavy objects fall faster than light objects, or that aliens live at area 51. A "reason to believe" could be based upon implicit or cultural bias, false rumors, a conspiracy theory, or as in this case, politically motivated accusations of illegal activity that have already been dismissed.

Further, this "reason to believe" standard allows the decision maker to cherry pick a single

piece of hearsay[4] evidence that it would like to believe and ignore all other facts and evidence to the contrary. It would effectively allow the CFB to ignore any evidence that the campaign had **not** engaged in conduct detrimental to the matching funds program.

This unlawful "reason to believe" standard allows the CFB to base its decision upon nothing more than "bare surmise, conjecture, speculation or rumor," *300 Gramatan Ave. Assocs.*, 45 N.Y.2d at 180. In applying this standard to the Adams Campaign, the CFB denied matching public funds based purely upon "seriously controverted" hearsay, which is not adequate "substantial evidence" for an administrative agency to base a decision. The CFB did not even attempt to reconcile its decision with those of United States District Court and Deputy Attorney General. Acts taken on the basis of "reason to believe" are, therefore, invalid because they are made in violation of lawful procedure and are affected by an error of law. And reaching the opposite conclusion to that of a federal judge and deputy attorney general, relying upon hearsay, and without explanation clearly demonstrates that the CFB's denial was arbitrary and irrational, and as a result, its decision must be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

**C. By denying campaign matching funds to the Campaign, the CFB denied the Campaign and its supporters their rights to free speech, due process, and equal protection**

That "reason to believe" standard crosses the discretionary boundaries permitted by the First Amendment. It gives the CFB far too much arbitrary leeway to burden a campaign and its

---

[4] "An indictment is a mere accusation and raises no presumption of guilt. It is purely hearsay for it is the conclusion or opinion of a body of men based on *ex parte* evidence. The rule applies to criminal actions as well as civil, and to all witnesses whether parties or not." *People v. Miller*, 91 N.Y.2d 372, 380 (1998), quoting from *People v. Morrison*, 195 N.Y. 116, 117 (1909).

supporters by making their speech "less effective." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 747 (2011)

The CFB's effort to dismiss the Campaign's constitutional claims is a struggle to force an obviously square peg into an equally obviously round hole. That strategy never works. The Campaign has sued the CFB for violating its free speech, due process, and equal protection rights[5] by invidiously *excluding* it from the City's matching fund program for political contributions. But to defend its impermissible conduct, the CFB falls back on case law that deals with a very different issue – *i.e.*, the extent to which the government may place *limits* on private donations and *restrictions* on matching funds. *See* ECF No. 12-1, CFB Br. at 31-34. Those decisions are not relevant here. The agency also ignores its own disparate treatment of the Campaign in making "reason to believe" determinations.

This case deals with the CFB *barring* a political candidate from receiving any public matching funds and thus triggers constitutional constraints on the program's *eligibility* conditions. And especially because public matching funds amplify a candidate's protected speech, the government may not allocate them in a discriminatory way. The Campaign has sufficiently alleged free speech, due process, and equal protection claims, and the CFB's contrary arguments should be rejected.

---

[5] The Campaign has asserted those claims under both the federal and state constitutions. Because the constitutional rights at issues are coextensive under federal and state law, the Campaign's brief relies on federal authorities. *See People ex rel. Arcara v. Cloud Books, Inc.*, 68 N.Y.2d 553, 558 (1986) (although First Amendment's scope "cannot be dispositive in determining the scope of the State's constitutional guarantee of freedom of expression," First Amendment principles prohibiting prior restraints "are equally applicable" under state constitution); *Central Sav. Bank v. City of New York*, 280 N.Y. 9, 10 (1939) ("no room for distinction in definition of the scope of the [federal and state due process] clauses"); *Elser v. Waters*, 56 N.Y.2d 306, 313-14 (1982) (New York "equal protection clause is no more broad in coverage than its Federal prototype" (cleaned up and footnote omitted)).

### 1. The amended petition-complaint states a free speech claim

Again, this case does not challenge any limitations that CFB places on the size, nature, or number of contributions that a candidate participating in the matching fund program may accept from private donors. This case challenges the unlawful exclusion of the Campaign from participating altogether in the City's matching fund program. That contextual difference should be legally dispositive. Because the Campaign does not complain about contribution limits under the City's voluntary matching funds program, the more lenient standard of review applicable to such claims, *see Ognibene v. Parks*, 671 F.3d, 174, 182-83 (2d Cir. 2011) (describing the "closely drawn" standard); *Green Party of Conn. v. Garfield*, 616 F.3d 189, 198 (2d Cir. 2010) (same), should fall by the wayside.[6]

Surely, restrictions that limit eligibility to public campaign matching funds in amounts potentially in the millions of dollars are not "merely marginal speech restrictions." *Green Party of Conn.*, 616 F.3d at 198 (internal quotation marks omitted). Lest there be any doubt, the Supreme Court has already stated that, as a practical matter, the deprivation of public matching funds received by other candidate's "substantially burden[s]" the unfunded candidate's own speech by making that "speech . . . less effective." *Arizona Free Enterprise Club's Freedom Club PAC,* 564 U.S. at 747 (internal quotation marks omitted"). In the decisive words of the Court's majority, "[o]f course it does." *Id.*[7]

---

[6] In its brief, the CFB argues at length that a candidate who "freely choose[s] whether to accept public funds and the conditions thereon in lieu of unlimited fundraising . . . cannot complain that those conditions burden [his] rights." ECF No. 12-1, CFB Br. at 32 (internal quotation marks omitted). But that argument is a complete non-sequitur. The Adams Campaign is not complaining about any burdens imposed by the CFB's matching fund program. The campaign challenges its unlawful exclusion from the CFB's program, burdens and all.

[7] By way of explanation, the Supreme Court observed that, "[a]ll else being equal, an advertisement supporting the election of a candidate that goes without a response is often mor effective than an advertisement that is directly controverted." *Arizona Free Enterprise Club's Freedom Club PAC*, 564 U.S. at 747.

CFB's improper exclusion of the Adams Campaign from the City's matching fund program has undeniably sabotaged the efficacy of the candidate's message. In that way, the agency's regulations most closely resemble a classic prior restraint on speech and should be analyzed as one. The law is clear that "a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing. Co.*, 486 U.S. 750, 757 (1988). Here, the CFB has improperly arrogated to itself exactly that type of unfettered authority.

In *MacDonald v. Safir*, 206 F.3d 183 (2d Cir. 2000), the Second Circuit squarely held that, "standing alone," a reason-to-believe standard is not "sufficiently precise to survive" a First Amendment challenge. *Id.* at 192 (internal quotation marks omitted). *MacDonald* involved a parade permit regulation that made it "unlawful for the police commissioner to grant a license where the commissioner had *good reason to believe* that the proposed procession, parade or race will likely be disorderly in character or tend to disturb the peace." *Id.* at 187 (emphasis added). The court concluded that the regulation's reason-to-believe standard "appear[ed] to afford the Commissioner exactly the sort of discretion that has been found to violate the First Amendment." *Id.* at 192 (footnote omitted).[8] *MacDonald* controls this case.

---

[8] The Second Circuit is not the only Court of Appeals to reach this conclusion. In *Fernades v. Limmer*, 663 F.2d 619 (5th Cir. Unit A 1981), *cert. dismissed* 458 U.S. 1124 (1982), for example, the Fifth Circuit held that "the standard of 'good reason' is indefinite and does not comport with the constitutional requirement that discretion in public officials be specifically and narrowly circumscribed" when free expression concerns are at stake. *Id.* at 631. Similar to *MacDonald*, *Fernandes* addressed a permit ordinance governing literature distribution and charity solicitation that authorized an official "to deny a permit when there is a *good reason to believe* that the granting of the permit will result in a direct and immediate danger or hazard to the public security, health, safety or welfare." *Id.* (emphasis added and internal quotation marks omitted). The Fifth Circuit invalidated the provision, reasoning that a "before-the-fact determination as to the harmful consequences of an applicant's speech is by this ordinance made a subjective judgment call in the total discretion of the [official]" and that this "type of unbridled discretion has been condemned time and time again by the Supreme Court." *Id.*

Nevertheless, the CFB relies on the district court's decision in *Liu v. New York City Campaign Finance Board*, 2015 WL 1514904 (S.D.N.Y. March 32, 2015), as support for denying matching funds to the Campaign under a "reason to believe" standard. According to the CFB, "[i]n *Liu*, a Rule that was essentially the same as Rule 3-01(d)(ii)(B) survived a facial First Amendment challenge because the reason to believe standard was 'sufficiently definite' to guide the Board's determination." ECF No. 12-1, CFB Br. at 34 (quoting *Liu*, 2015 WL 1514904, at *13). Although the *dictum* in *Liu* is not persuasive, its holding is entirely consistent with the First Amendment claim the Adams Campaign makes here.

To start, by rejecting the "argument that the 'reason to believe' standard is so indefinite as to be meaningless and incapable of providing guidance to the decision makers," *Liu*, 2015 WL 1514904, at *13, *Liu* contradicts the Second Circuit's express holding in *MacDonald*, 206 F.3d at 192. Indeed, *Liu* does not even acknowledge that *MacDonald* both confronted the "reason to believe" standard in a First Amendment context and concluded that, on its face, that standard worked a prior restraint. In short, this Court should not follow *Liu* into error.

In any event, *Liu* rejected an as-applied challenge to the "reason to believe" standard for reasons that do *not* apply here. There, the campaign's treasurer and a campaign fundraiser were convicted of felony fraud violations that comprised "an illegal fundraising scheme." *Liu*, 2015 WL 1514904, at *2. Given those convictions, the district court reasonably concluded that "there was ample basis for the Board to believe that Plaintiffs violated the [campaign finance statute] and Board rules," and thus "any 'as-applied' challenge by Plaintiffs [was] meritless from the face of the Complaint." *Id.* at 9.[9]

---

[9] Having concluded that the "reason to believe" standard was constitutional as applied, the district court in *Liu* had no need to pass upon the validity of the plaintiffs' facial challenge. Consequently, the court's discussion of the standard's facial validity under the First Amendment was simply *dictum*.

By sharp contrast, the only basis for the CFB's asserted "reasons to believe" that the Adams Campaign violated matching fund rules were the unproven allegations in Mayor Adams's *dismissed* indictment,[10] which did *not* even implicate Mayor Adams or the current campaign treasurer in any personal wrongdoing. *See* ECF 1-1 at 112-113, Amended Petition-Complaint ¶¶ 4-9. But without a similar judgment of conviction, or even administrative findings, the CFB has absolutely nothing in this case to ward of an as-applied challenge to Rule 3-01(d)(ii)(B) at the pleading stage. *See Dumas v. City of Dallas*, 648 F. Supp. 1061, 1074-75 (N.D. Tex. 1986), *affd sub nom. FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir. 1988), *affd in part, vacated in part,* 493 U.S. 215 (1990) ("The simple act of indictment or information cannot carry the heavy burden implicit in suppressing speech that is protected by the first amendment, and may implicate overbreadth in chilling protected speech.")

Finally, contrary to the CFB's arguments, *see* ECF 12-1, CFB Br. at 30-34, the Adams Campaign has plausibly stated both a facial and as-applied challenge to Rule 3-01(d)(ii)(B). "A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the

---

[10] The CFB argues that Mayor Adam's indictment "is evidence of probable cause to believe that a charged crime has been committed" and that probable cause "is a higher standard than 'reason to believe.'" ECF 12-1, CFB Br. at 17. It then concludes with a deeply flawed syllogism, *i.e.*, "based on the factual allegations in the Indictment, there must be reason to believe that violations of federal law occurred, since a grand jury found *probable* cause for criminal corruption charges." *Id.* That reasoning is pure sophistry because an indictment's probable cause determination and the CFB's reason to believe finding serve completely distinct purposes. The two standards should not be conflated.

To be clear, a "grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated." *U.S. v. Calandra*, 414 U.S. 338, 343 (1974). Instead, "it is an ex parte investigation to determine whether . . . criminal proceedings should be *instituted* against any person." *Id.* at 343-44 (emphasis added). In other words, it is merely the beginning of an adjudicative process.

Rule 3-01(d)(ii)(B)'s reason to believe finding is profoundly different. It results in the final assignment of liability and the imposition of the associated penalty – a candidate's exclusion from the matching fund program. "No such negative consequence follows from a non-adversarial finding of probable cause in criminal cases because it determines only whether grounds exist to proceed to trial." *Hicks v. Comm'r of Social Security*, 909 F.3d 786, 802 (6th Cir. 2018) (distinguishing between a reason to believe determination that has final consequences in administrative proceedings and "initial probable cause determination" in a criminal case). The CFB's word game is thus a dangerous mix of apples and oranges.

particular circumstances of an individual." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). A facial challenge under the First Amendment also "lies wherever a licensing law gives a government official or agency substantial power to discriminate based upon the content or viewpoint of speech." *Id.* at 176 (internal quotation marks omitted). Here, the Adams Campaign has alleged that Rule 3-01(d)(ii)(B) affords the CFB too much discretion and that it is subject to the agency's arbitrary application of that provision. *See* Amended Petition-Complaint ¶¶ 63-68, 108-113. At the pleading stage, "[n]othing more is needed for a facial challenge." *MacDonald*, 206 F.3d at 189 (assessing claim under Fed. R. Civ. P. 12(b)(6) and 56 and remanding for necessary factual development).[11]

On the other hand, an as-applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to who it was applied of a protected right." *Field Day, LLC*, 463 F.3d at 175. That said, it does not require additional allegations to those sufficient to state a facial challenge. The distinction between a facial and as-applied challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in the complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Thus, because the Campaign has stated a viable facial challenge, it has also stated a viable as-applied claim.

### 2. The amended petition-complaint states a due process claim

The CFB's attack on the Adams Campaign's due process claim is also unfounded. Once again, the agency mounts a defense on legal principles that are simply inapplicable to this case.

---

[11] In *MacDonald*, the Second Circuit remanded the case to the district court to assess whether "any binding judicial or administrative construction" of the ordinance cured its facial invalidity, as is required to defeat a facial challenge. 206 F.3d at 191; *see also Field Day, LLC*, 463 F.3d at 176 (restating facial challenge must consider judicial and administrative constructions of statute to determine whether they narrow its application).

The CFB draws the Court's attention to various elements of substantive and procedural due process but overlooks the correct analysis. *See* ECF No. 12-1 at 25-26.[12] To begin, the agency takes the threshold stance that the Campaign's "allegations do not establish that [it] has a constitutional right at stake or a protected interest." *Id.* at 25. That argument is demonstrably wrong.

"As one of the most fundamental protections of the Due Process Clause, the void-for-vagueness doctrine requires that the laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (cleaned up). Under that doctrine, "there are two independent grounds upon which a statute's language may be so vague as to deny due process of law." *Cunney v. Bd. of Trustees of Village of Grand View, NY*, 660 F.3d 612, 620 (2d Cir. 2011). A law is void for vagueness if it: (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," and (2) "*authorizes or even encourages arbitrary and discriminatory enforcement.*" *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Cunney*, 660 F.3d at 620 (same); *Thibodeau*, at 486 F.3d 65-66 (same).

For the reasons already stated, *see supra* at I.B and I.C.1, the "reason to believe" standard contained in Rule 3-01(d)(ii)(B) at the very least "encourages arbitrary and discriminatory enforcement" of the regulation. *Hill*, 530 U.S. at 732. The CFB tries to ameliorate that fatal flaw in the regulation by invoking the so-called "core concern" of matching fund program: "the

---

[12] The CFB maintains that the Adams Campaign's due process claim is fatally defective because its "allegations do not establish that [it] has a constitutional right at stake or a protected interest." ECF No. 12-1 at 25. Although irrelevant, that argument is mistaken. Free speech most certainly constitutes a liberty interest protected by due process. *See De Jonge v. State of Oregon*, 299 U.S. 353, 360 (1937); *Mercer v. Schriro*, 337 F. Supp.3d 109, 151 (D. Conn. 2018); *Vaher v. Town of Orange*, 916 F. Supp.2d 404, 432 (S.D.N.Y. 2013). And as a certified participant in the matching fund program, the Campaign arguably has a property interest in receiving matching funds. *See Looney v. Black*, 703 F.3d 701, 706 (2d Cir. 2012) (property interests protected by due process are defined by state law).

reduction of corruption and the removal of influence or perceived influence of wealthy special interests." ECF No. 12-1 at 28 (internal quotation marks omitted). The effort fails.

As the Second Circuit has explained,

> [w]here the ordinance has a clear core, the [due process] inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the ordinance that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the ordinance's application in the circumstances.

*Cunney*, 660 F.3d at 623 (cleaned up). With a strategically loose grasp of that principle, CFB declares victory. "Mayor Adams actions *as alleged* in the Indictment fall directly within the core of the Rule's prohibition on conduct detrimental to the program," CFB insists, and, consequently, there "was no arbitrary enforcement of the Rule as applied." ECF No. 12-1 at 29 (emphasis added).

To make that argument is to defeat it. According to CFB, no rational official could doubt that *unproven allegations* of wrongdoing provide "reason to believe" that Mayor Adams "engaged in conduct detrimental to the Program that is in violation of any other applicable law." Rule 3-01(d)(ii)(B). That idea is the antithesis of due process.

### 3. The amended petition-complaint states an equal protection claim

Sticking to a consistent strategy, the CFB argues against the Campaign's equal protection claim by applying the wrong legal framework. Equal protection claims are *not* limited to instances of intentional discrimination, as the CFB maintains. *See* ECF No. 12-1 at 23. The Second Circuit has made clear that a plaintiff can state an equal protection claim in cases where: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Hu v. City of New York*, 927 F.3d

81, 94 (2d Cir. 2019). This constitutional cause of action purposefully does *not* involve "a malice-based theory." *Id.*

The Campaign asserts that species of equal protection claim here. On May 12, 2025, The CFB announced that it had "reason to believe" that the Cuomo mayoral campaign had violated CFB rules by improperly coordinating advertising expenditures with a political action committee. CFB June 9, 2025 press release, *NYC Campaign Finance Board Approves Updated Payment, Withholding Amounts for the Cuomo for NYC Campaign,* available at https://www.nyccfb.info/media/press-releases/nyc-campaign-finance-board-approves-updated-payment-withholding-amounts-for-the-cuomo-for-nyc-campaign/[13]. After making certain adjustments, the CFB ultimately withheld approximately $750,000 in matching funds from the Cuomo campaign but made a payment of approximately $540,000. *Id.* The actionable disparity here is that the CFB based its reason-to-believe finding on demonstrated *facts* and not merely unproven *allegations*.

Adams and Cuomo are both competing for public matching funds in the same mayoral race and are subject to the same CFB rules. They are identically situated[14] and there is no legitimate government policy that condones Adams's conviction by speculation especially where, applying the same reason to believe standard, Cuomo received a fact-based penalty. Nor was that glaring difference the result of an error. The CFB repeatedly, expressly, and intentionally excluded the

---

[13] "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). In that regard, the Court "may take judicial notice of documents from official government websites," and therefore may take notice of the CFB's official announcements. *Rynasko v. New York Univ.*, 64 F.4th 186, 191 n.4 (2d Cir. 2023).

[14] The Second Circuit has emphasized that, because the "question of whether parties are similarly situated is generally a fact-intensive inquiry that depends heavily on the particular context of the case at hand, . . . [the court] has cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Hu*, 927 F.3d at 97 (cleaned up).

Campaign from receiving matching funds based on a dismissed indictment. Those facts plausibly state an equal protection claim. *See Hu*, 927 F.3d at 94.

**II**

**The CFB's denial of campaign matching funds to the Adams
Campaign based on a politically-motivated, now-dismissed
indictment of Mayor Adams is arbitrary and capricious**

The CFB's decision to deny the Campaign matching funds because there was "reason to believe that a campaign has engaged in conduct detrimental to the matching funds program, in violation of law" fails the most basic standard of administrative law. The ruling is arbitrary and capricious because the now-dismissed indictment -- which the CFB has identified as the sole basis for its "reason to believe" finding – is rank hearsay. It is bereft of facts that could support the agency's decision. *See Matter of Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1*, 34 N.Y.2d 222, 231 (1974) (judicial review of administrative decisions "chiefly 'relates to whether a particular action should have been taken or is justified *** and whether the administrative action is without foundation in fact"); *see also Matter of Aponte v. Olatoye*, 30 N.Y.3d 693, 697 (2018) (same).

**A. An indictment is not a lawful basis for administrative action**

It is a fundamental principle of American law that a person accused of a crime is innocent until proven guilty. *See People v. Razeicz*, 206 N.Y. 249, 273 (1912); *Coffin v. United States*, 156 U.S. 432, 453 (1895), *Dumas,* 648 F. Supp. at n36 (N.D. Tex. 1986) ("Denial of licensure on the basis of investigation into a crime constitutes punishment without the requisite finding of guilt"). A corollary to this rule is that "[a]n indictment is a mere accusation and raises no presumption of guilt. It is purely hearsay, for it is the conclusion or opinion of a body of men based on *ex parte* evidence." *People v. Miller*, 91 N.Y.2d 372, 380 (1998) (internal quotation marks omitted). And although the CFB, as an administrative agency, is not entirely confined by the rules of evidence, "[h]earsay evidence will not satisfy [administrative review] if the facts it purportedly establishes

are "seriously controverted." *Gerald HH. v. Carrion*, 130 A.D.3d 1174, 1176, (3d Dep't 2015) (citations omitted). *See also Ridge, Inc. v. New York State Liquor Auth.*, 257 A.D.2d 625, 626 (2d Dep't 1999) (unsworn statement was not substantial evidence where there was conflicting testimony), *Fellowmen Cmty. Dev. Corp. v. New York State Liquor Auth.*, 219 A.D.2d 871 (4th Dep't 1995)(hearsay evidence which was controverted by sworn statements was not substantial evidence).

Here, based on a dismissed indictment, the CFB denied the Campaign matching funds, concluding "there is reason to believe the Adams campaign has engaged in conduct detrimental to the matching funds program, in violation of law, including the Campaign Finance Act and Board Rules." ECF No. 11-2, Exhibit 6. But because an indictment has no probative value, it could not even satisfy the CFB's erroneous "reason to believe" standard. *People v. Miller*, 91 N.Y.2d at 380, *Tot v. United States*, 319 U.S. 463, 466 (1943) ("An indictment charges the defendant with action or failure to act contrary to the law's command. It does not constitute proof of the commission of the offense.").[15]

Further, even if the allegations in the dismissed indictment could be accepted as true, it would not support the CFB's "belief." The CFB insists its denial was based upon the information contained in the September 26, 2024 indictment of Mayor Adams, which caused the CFB to develop a belief that "Eric Adams, in the course of public funds program participation, engaged in conduct detrimental to the Program." ECF No. 11-2, Exhibit 25. That belief is entirely irrational. Most of the events that are referenced in that indictment took place *before* 2022, *before* Mayor Adams and the Adams Campaign began participating in the matching funds program. Contrary to

---

[15] And the allegations in the indictment are also seriously controverted, a fact that prohibits the CFB from affording it any weight whatsoever.

the CFB's conclusion, the relevant events did *not* occur "*in the course of* the public funds program."

**B. The Adams indictment, in particular, is a politically-motivated act that cannot lawfully be relied on to establish any fact whatsoever**

As explained in the Petition-Complaint, the indictment is replete with bare and biased allegations. In fact, some of the evidence described in the indictment shows that Mayor Adams *did not* solicit and accept campaign funds from foreign nationals. For example, the former Assistant United States Attorney who initiated the case included in the indictment a text message from Mayor Adams to a staffer stating, "We can't take money from people who are not U.S. citizens." Amended Petition-Complaint ¶ 123.

The then-Deputy Attorney General of the United States, after reviewing the entire prosecution file, presumably including portions not available to the CFB or the public, concluded that the indictment was fundamentally flawed. He went so far as to tell the United States District Court that "the prosecution reflects an improper weaponization of the criminal justice system, which has given rise to 'appearances of impropriety and risks of interference with the 2025 elections in New York.'" *Id.* ¶ 126. He further stated that the indictment had to be dismissed because "the appearances of impropriety are too great based on the conduct of the former U.S. Attorney who initiated the case." *Id.* ¶ 127. Worse yet, one of the Assistant United States Attorneys who worked on the prosecution said that the theory that the United States Attorney who brought the case "had a political motive" for doing so "seems pretty plausible to me." *Id.* ¶ 128.

The CFB ignored all this and denied campaign matching funds to the Campaign solely based on the allegations in the now-dismissed indictment. Essentially, the CFB is continuing the vindictive political prosecution of Mayor Adams and interfering with the 2025 election after the United States Justice Department determined that the prosecution must be dismissed. The CFB

made no attempt to reconcile how it reached a different conclusion than the Deputy Attorney General. This inconsistency further demonstrates how the CFB's decision was either arbitrary and irrational, or improperly politically motivated. The CFB's determination must therefore be annulled and the CFB must be ordered to approve the request made by the Adams Campaign for campaign matching funds.

## III

### The CFB's determination must be annulled for the additional reason that it was made in violation of the New York City Administrative Procedure Act

New York City Charter § 1046 – the New York City Administrative Procedure Act – requires that "[a]ny recommended decision, final decision, determination or order shall be in writing or stated in the record if the parties are present and shall include findings of fact and conclusions of law." New York City Administrative Procedure Act § 1046(f). It is black letter law that an agency acts arbitrarily and capriciously if it renders a decision unsupported by the record before it. *See Metropolitan Taxicab Bd. of Trade v. New York City Taxi & Limousine Comm'n*, 18 N.Y.3d 329, 334 (2011) ("Absent a predicate in the proof to be found in the record, [an] unsupported determination ... must ... be set aside as without rational basis and wholly arbitrary." (internal quotation and cite omitted)). Here, the CFB made its decision not on a factual bases, but because they claim to have a "reason to believe." But mere general conclusions without a statement of the factual considerations which led to the conclusions do not constitute findings of fact. *See Barry v. O'Connell*, 303 N.Y. 46, 51 (1951) and *Application of American Seminary of Bible*, 280 A.D. 792, 793 (2d Dep't 1952). That's all the CFB provided here – reasons to believe. But that does not cut it. *See In re New York Water Service Corp.,* 283 N.Y. 23, 27 (1940) (findings of fact requirement not satisfied by statements describing facts solely in the terms used in the governing statute).

The CFB made no factual determination, and therefore its denial was arbitrary and capricious, in violation of the New York City Administrative Procedure Act, and must be annulled.

**IV**

**The CFB's remaining reasons for denying campaign matching funds
to the Adams Campaign are arbitrary and capricious pretexts for
the CFB's otherwise illegal determination**

The CFB has, at various times, asserted that it was denying matching campaign funds to the Adams Campaign because Mayor Adams had failed to file his annual disclosure form and because the Adams Campaign had failed to respond, without explanation, to the CFB's request for documents and information. Neither basis for the CFB's denial is supported by the facts; both are arbitrary and capricious pretexts for the CFB's fundamentally arbitrary and capricious, illegal and unconstitutional denial of campaign matching funds to the Adams Campaign.

**A. Mayor Adams timely filed his financial disclosure statement**

Mayor Adams filed his annual financial disclosure statement on April 14, 2025. ECF No. 11-2, Exhibit 29(A). He filed an amended disclosure on April 25, 2025. The Conflicts of Interest Board accepted his filing as complete no later than 4:40 p.m. on April 25, 2025. *Id.* Exhibit 28. The CFB Chair purportedly denied the application for campaign matching funds, without any delegated authority to do so, on May 2, 2025. The CFB actually denied the Adams Campaign's petition for reconsideration on May 12, 2025, 17 days after the disclosure had been accepted and the CFB knew it had been accepted.

Initially, the record raises a question as to whether the CFB denied the petition for reconsideration on the basis of the allegedly untimely filing of the annual disclosure at all. According to the CFB's counsel, the Chair, in his purported determination of the reconsideration petition on May 2, 2025, addressed that portion of the petition on the merits and denied

27

reconsideration on the ground that the disclosure form had not been submitted to the Board "three days prior to the April 15, 2025 payment date." ECF No. 11-2, Exhibit 30.[16] The CFB's statement that day was slightly different, stating that "[t]he Campaign is not eligible for payment because it has not demonstrated compliance with Admin. Code § 12-110, as determined by the Conflicts of Interest Board." *Id.* Exhibit 31. In his letter to the Adams Campaign, also dated May 2, 2025, the general counsel never even mentioned the disclosure issue as a basis for the Chair's determination. *Id.* Exhibit 32. When the CFB actually rejected the campaign's petition for reconsideration, on May 12, 2025, the sole basis its counsel articulated for its determination was that "[t]he petition did not demonstrate that the nonpayment determination was erroneous based on the information and documentation available to the Board at the time the determination was made." *Id.* Exhibit 33.

Even assuming the annual disclosure was the basis for the CFB's decision, the deadline for filing the annual disclosure is, at best, unclear. Although Campaign Finance Act § 3-703(m) requires as a condition of eligibility for campaign matching funds that the candidate "fulfill the requirements of section 12-110 of the administrative code of the city of New York," the deadline the deadline is unclear. Section 12-110 requires a candidate for public office to file a disclosure report "within 25 days after the last day for filing his or her designating or independent nominating petitions pursuant to the election law." Administrative Code § 12-110(2)(a). The last day to file

---

[16] Although the CFB asserts that the Chair denied the petition for reconsideration, there is no basis in the record for his authority to do so. The rule the CFB cites repeatedly to assert the Chair's authority, CFB Rule 7-09(c)(1), does not confer on the Chair the authority to act when the CFB cannot meet, it simply allows the CFB to delegate that authority to the Chair:

> If the Board is unable to convene within five business days of the petition, or if the petition is filed less than three business days prior to the next scheduled board meeting, then the board may delegate to the Chair of the Board or the Chair's designee authority to make a determination regarding the petition.

There is no delegation in the record the CFB has produced. In the absence of a delegation, the Chair's action was without authority and of no significance.

independent nominating petitions for the office of Mayor for the 2025 election cycle was May 27, 2025. Election Law § 6-158(9). Mayor Adams's disclosure was filed on April 25, 2025, well before this deadline.

Section 12-110 goes on to allow the Conflicts of Interest Board to establish filing dates "which a person who intends to seek payment on the payment dates of February 15, March 15, or April 15 shall file such report,"[17] which it has done. COIB Rules § 4-05. The Campaign Finance Act correspondingly establishes the filing deadline as "no less than three days prior to such payment date," Administrative Code § 3-703(1)(m)(ii), but does not make eligibility for campaign matching funds dependent on timely filing of the disclosure statement. Rather, the Campaign Finance Act provides only "that a failure to fulfill the requirements of section 12-110 of the administrative code to the satisfaction of the conflicts of interest board in a timely fashion pursuant to subparagraph (ii) of this paragraph *may result in a delay* of any payment of public funds by the board." Administrative Code § 3-703(1)(m)(ii). The Campaign Finance Act establishes, therefore, that untimely filing of the disclosure statement is not a fatal defect in the application for campaign matching funds, it simply results in a delayed payment.

The CFB's rules expressly acknowledge this distinction between eligibility and delayed funding in Rule 3-05(a):

> In order to be eligible to receive public funds, a candidate must comply with the requirements in § 12-110 of the Code, including payment of any penalties assessed by the conflicts of interest board. The Board confirm the candidate's compliance with the conflicts of interest board. The failure of a candidate to demonstrate compliance by the deadline established pursuant to §§ 3-703(1)(m) and 12-110 of the Code may result in a delay of any payment by the Board.

---

[17] The term "board" as used in section 12-110 means the Conflicts of Interest Board. Administrative Coded § 12-110(a)(5).

Here, the Adams Campaign has satisfied the eligibility requirements for campaign matching funds by filing the annual disclosure, as the CFB has acknowledged, on April 25, 2025. ECF No. 11-1 ¶ 56. Thus, the CFB would have been justified in delaying payment to the Adams Campaign until the disclosure statement had been filed. But it had no lawful basis for deciding on May 12, 2025 that the Adams Campaign was not eligible for campaign funds.

The CFB's rules provide that a late submission "may prevent the Board from making a timely determination regarding payment of public funds." CFB Rules § 1-04(iii). The rules do not provide that a late submission *will* prevent the CFB from considering the late submission. Rather, the rules provide that that "[t[he Board shall make such a determination at such time as is practicable." *Id*. The CFB can, therefore, under its rules, accept a late submission. Here, it acted arbitrarily and capriciously in refusing to do so.

The Adams Campaign petitioned for reconsideration on April 25, 2025, arguing, among other things, that "[t]here was no basis to find the Adams Campaign ineligible for public funds based on its failure to timely file its annual Conflict of Interest Board disclosure because Mayor Adams filed the disclosure at 8:03 p.m. on April 14, 2025." ECF 11-1 ¶¶ 57-58. The CFB did not make its determination until May 12, 2025, 17 days later. The CFB clearly has authority to accept late submissions. Its rules expressly provide that late submission "***may*** prevent the Board from making a timely determination," CFB Rules § 1-04(b)(iii), not ***will*** prevent it from doing so. And it was arbitrary and capricious for it to refuse to consider the late submission here.

The CFB's insistence on the deadline for the submission of the annual disclosure as a basis for denying campaign matching funds to the Adams Campaign is just one more example of its bad faith and obvious intent to hurt the dams Adams Campaign. In reality, therefore, the CFB did not deny the Adams Campaign's petition until its May 12, 2025 meeting, by which time the CFB knew

for 17 days that Mayor Adams's disclosure had been filed and accepted as complete. ECF 11-1 ¶ 56. Denial of the petition by reason of the failure of the Adams Campaign to do something that the Board already knew it had done is inconsistent with the facts and, therefore, arbitrary and capricious. *See also Gerson v. New York City Campaign Finance Board*, 171 A.D.3d 648, 649 (1st Dep't. 2019) (CFB's decision to deny matching funds based on allegedly improper documentation was arbitrary and capricious).

**B. The CFB's denial of campaign matching funds to the Adams Campaign on the ground that the campaign had failed to respond to the CFB's request for information is false, disingenuous, illegal, arbitrary, and capricious**

The CFB's only arguments with respect to the Adams Campaign's response to the CFB's November 15, 2025 information request are that the response was untimely and did not include responses from Mayor Adams. ECF No. 12-1 at 11. Neither justifies its decision to deny campaign matching funds.

Mayor Adams was indicted on September 26, 2024. ECF ¶ 16. On November 15, 2024, CFB Director of Special Operations Jesse Schaffer advised Vito Pitta, counsel to Eric Adams 2021 and Eric Adams 2025 that the CFB "requires information" from the two campaigns regarding the indictment of Mayor Adams. Exhibit 4. Mr. Schaffer's letter stated, however, that the CFB had already concluded that it would deny campaign matching funds to the Adams Campaign:

> CFB staff has reviewed the indictment of Eric Adams (24 CR 556). Based on the indictment, there is reason to believe that the Campaigns committed violations of various federal statutes, Campaign Finance Act provisions, and Board Rules, which would make the 2025 Campaign ineligible to receive a public funds payment on December 16, 2024.

ECF 11-1, Exhibit 6 at 1.

Initially, the Adams Campaign legitimately refused to respond to the CFB's inquiry while the indictment was pending. The CFB requested the documents to prove that Mayor Adams had committed federal and state crimes. Its general counsel's May 2, 2025 letter says exactly that,

identifying each of the statutes Mayor Adams allegedly violated. ECF 11-2, Exhibit 32. The privilege against self-incrimination applies in administrative proceedings. *See Kastigar v. United States*, 406 U.S. 441, 444 (1972). An administrative agency, therefore, cannot require compliance with a demand for information that may incriminate the party before it. *See State v. Sinisgalli*, 11 A.D.3d 886, 887 (4th Dep't 2004).

Nevertheless, and despite the disingenuous nature of the inquiry – since the decision to deny campaign matching funds had already been made – Mr. Pitta responded on behalf of the campaigns by leaving a voicemail for Mr. Schaffer stating: "After consultation with criminal counsel, given that the requests relate specifically to events that were referenced in the Indictment, this is not something that we can respond to at this time." ECF No. 11-1 ¶ 18.

Once the indictment was dismissed, however, the Adams Campaign promptly responded to the CFB's request. Judge Ho dismissed the indictment on April 2, 2025. ECF No. 11-2, Exhibit 21. Twelve days later, on April 14, 2025, Mr. Pitta responded to the inquiry. *Id.* Exhibit 22. His response addressed each of the requests the CFB made.

The CFB could not have reasonably requested a faster response. The fact that the CFB met on April 15, 2025 is not a rational basis for declining to consider the response. As discussed above, the CFB did not make a final decision to deny the Adams Campaign's request for campaign matching funds until May 12, 2025. Under the CFB's rules, as also discussed above, it could have considered the campaign's submission, but chose not to do so. That was arbitrary and capricious.

Despite this, the CFB has continued to cite the Adams Campaign's failure to respond as a basis for denying campaign matching funds. The CFB responded to the Adams Campaign's April request for matching funds in three documents. First, in a statement on April 15, 2025, it identified the determination of non-eligibility on the Adams Campaign's failure to demonstrate compliance

with the annual disclosure requirement. *Id.* Exhibit 23. On the same day it released a second document stating that the denial was based on "substantial violations" of §§ 3-703; 3-705(1), 3-711; Board Rules 3-01(d)(i)(G), (ii)(H), 3-01(e), with details to follow. ECF No. 11-2 Exhibit 24. Then the CFB issued a letter stating that it had denied the petition for campaign matching funds because the information contained in the indictment of Mayor Adams gave it reason to believe that Mayor Adams had "engaged in conduct detrimental to the Program that is in violation of federal, state, and/or City law, including the Campaign Finance Act and Board Rules" and because the campaign had failed to respond the November 15, 2024 request for "documentation and information related to the allegations in the indictment." *Id.* Exhibit 25.

An administrative determination that is inconsistent with the facts is arbitrary and capricious. *Simon Green, Inc. v. New York State Division of Housing and Community Renewal*, 228 A.D.3d 670, 672 (2d Dep't 2024)) (An administrative determination is deemed arbitrary and capricious when it is made without a sound basis in reason or regard to the facts. (citations omitted)). *See also Matter of Peckham v. Calogero,* 12 N.Y.3d 424, 431 (2009), *Matter of Murphy v. New York State Div. of Hous. & Community Renewal,* 21 N.Y.3d 649, 652 (2013), and *Matter of Pell,* 34 N.Y.2d at 231 (1974) (same). If an agency's decision deviates from the facts or lacks a rational basis, it must be reversed. *Costco Wholesale Corp. v. New York State Liquor Auth.,* 125 A.D.3d 775, 776 (2d Dep't 2015) ("Furthermore, reliance upon an improper basis for its determination requires that the determination be annulled, regardless of whether the [agency] also relied, in part, upon valid considerations." (citations omitted)).

The CFB's position now, in opposition to the petition, is that the April 14, 2025 response was insufficient because it "does not say that Mayor Adams himself had reviewed his records for responsive documents." ECF No. 11-1 ¶ 48. But that ignores the fact that the CFB's request was

addressed only to Eric Adams 2021 and Eric Adams 2025. The CFB never made a request of Mayor Adams. And Mr. Pitta responded completely on behalf of the Adams Campaign.

The CFB's continuously changing rationales demonstrates the disingenuous nature of the inquiry. Initially, as the November 2024 letter itself makes clear, the CFB had already determined that it had "reason to believe" based on the indictment. The request was not a search for the truth, it was a search for actual evidence to support the conclusion the CFB had already made and an acknowledgment of the CFB's recognition that the indictment alone was insufficient to sustain its intended determination. The Adams Campaign's initial response – that it could not respond to such an inquiry because of the pending indictment – presented a legitimate reason for the delayed reply. As soon as the Adams Campaign could respond to the request, it did. But the CFB refused to consider that because it would have been inconsistent with the CFB's pre-ordained conclusion.[18]

### CONCLUSION

For all of these reasons, Petitioners-Plaintiffs respectfully request that the motion to dismiss be denied and the relief requested in the petition-complaint be granted.

ABRAMS FENSTERMAN, LLP
*Attorneys for Petitioners-Plaintiffs*

By: _____
Robert A. Spolzino
Daniel S. Alter
Mary E. Desmond
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
(718) 215-5300

Dated: Brooklyn, New York
     July 2, 2025

---

[18] The CFB has since served a new eight-page single-spaced demand for additional documents also related to the indictment.

34