UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

In the Matter of
Eric Adams 2025, Eric Adams, Sharon
Adams, as Treasurer of Eric Adams 2025,
Marietta Rozental, Joe Shanie, and Malcolm
Adams,

                Petitioners-Plaintiffs,

     - against -


New York City Campaign Finance Board,

              Respondent-Defendant.

CIVIL ACTION NO. 25-cv-3380 (NGG)

## SECOND DECLARATION OF PAUL S. RYAN

I, Paul S. Ryan, make the following declaration pursuant to 28 U.S.C. § 1746:

1.      I am Executive Director of the New York City Campaign Finance Board (the "Board" or "Defendant"). I am familiar with the facts underlying this action, and I make this declaration on personal knowledge in support of the Defendant's Motion for Judgment on the Pleadings and in response to questions posed by Judge Garaufis in his order, dated July 1, 2025.

**Eligibility Determinations and Petitions for Reconsideration**

2.      There are thirteen matching funds payment dates during the 2025 New York City election cycle to ensure that candidates have ample opportunities to present their eligibility to the Board.

3.      The Board determines eligibility for matching funds based on an assessment of compliance with the Campaign Finance Act and Board Rules as of the payment date. The Board does not make prospective judgments about a candidate's eligibility.

1

4.      The full Board must meet to determine a candidate's eligibility for matching funds.  After the Board makes that determination at a regularly scheduled meeting, a candidate may petition the Board under Rule 7-09 for reconsideration of such determination. A petition for review must not include any documentation or factual information not submitted to the Board prior to the determination under review, unless the candidate can demonstrate good cause for the previous failure to submit such documentation or information. *See* Rule 7-09(b). The purpose of Rule 7-09 review is to correct an error made by the Board (*e.g.*, staff erroneously advised the Board that a candidate had not timely filed his COIB disclosure), not to correct an error made by a campaign (*e.g.*, the candidate failed to timely file his COIB disclosure). A candidate's remedy for his own error is to correct his error and establish his eligibility in advance of the next regularly-scheduled payment date.

5.      During this campaign cycle, there are more than 200 candidates seeking matching funds. The Board cannot be required to meet between payment dates on each occasion that a candidate failed to meet eligibility requirements on the last payment date, but does not want to wait until the next payment date for the Board's determination of their eligibility. Such a program would not be administrable.

6.      Brad Lander, a candidate for Mayor in the Democratic primary this cycle, had met the financial threshold for public funds by the December 16, 2024 payment date but was found by the Board to be ineligible because the Lander campaign submitted some required documentation more than 24 hours past the relevant deadline. Though the Lander Campaign's submission was too late to demonstrate eligibility on December 16, the submission was accepted to demonstrate eligibility at the following payment date, January 15, 2025.

7.      Similarly, Andrew Cuomo, a candidate for Mayor in the Democratic primary this cycle, had otherwise met the threshold for public matching funds by the April 15, 2025 payment date but was found by the Board to be ineligible at that time because the Cuomo campaign submitted hundreds of contributions for match that were missing required documentation, in this instance, address verification affirmation statements for certain credit card contributions, in violation of Rule 4-01(b)(ii)(A)(4). The Campaign successfully provided enough of these statements and demonstrated eligibility at the following payment date, May 12, 2025.

8.      The relevant facts for this action, which seeks redress from the Board's April 15 decision, all occurred prior to or on April 15, 2025. Steps taken by the candidate after the Board's eligibility determination, to remedy any defects that the Board identified in a candidate's eligibility for matching funds, are considered at the next Board meeting – not at any interim date between meetings through a Rule 7-09 petition or other means.

9.      Accordingly, the Board has not made a determination as to whether actions taken by the Adams Campaign after April 15, 2025 satisfy eligibility requirements for matching funds. The Board will make that determination at the next Board meeting on July 15, 2025.  In the interim, I am able to provide information about what the Board's staff currently intends to recommend to the Board on the next payment date regarding the Adams Campaign's eligibility for public matching funds.

**The April 14 Document Request Response Did Not Satisfy the Rules On April 15, Nor Does it Satisfy the Rules Today**

10.     As explained in my Declaration in Support of the Answer, the Adams Campaign submitted a response to the Board's November 15, 2024 request for documents and information at 10:38 p.m. on April 14, 2025; 129 days after it was due on December 6, 2025, and only hours before the Board's 10:00 a.m. public meeting on April 15, 2025. The Board did not have a

reasonable opportunity to review the April 14, 2025 response (attached as Exhibit 22 to my Declaration in Support of the Answer; the "April 14th Response") before the April 15, 2025 meeting in which it voted to deny public funds to the Adams Campaign.

11.    The November 15, 2024 request stated that, based upon the review of the indictment of Mayor Eric Adams by Board staff, "there is reason to believe that the [2021 and 2025] Campaigns" committed violations that would make the Adams Campaign ineligible for public funds payment on December 16, 2024.

12.    The "reason to believe" in the November 15, 2024 request refers to the staff's view at that time. The Board is not bound by staff views or recommendations. The purpose of including that language in the letter was to appraise the Adams Campaigns of the possibility of a finding of ineligibility by the Board and to give the Adams Campaigns an opportunity to respond prior to the Board's determination.

13.    The Board has not yet met to determine the adequacy of the April 14th Response and will not do so until the next payment date, July 15, 2025.

14.    Board staff expects to recommend that the Board find that the April 14th Response to the Board's November 15, 2024 request for documents and information does not currently satisfy Board Rule 3-01(d)(i)(A)(2) and Admin. Code § 3-703(1)(d) requirements.

15.    As a candidate for office, Mayor Adams is responsible for ensuring his Campaign's compliance with applicable laws and rules. As is required of all candidates who take part in the Matching Funds Program, Mayor Adams attested to this responsibility when filing his certifications to become a Program participant. A copy of Mayor Adams's 2025 Certification is attached as Exhibit A. As part of this certification, Mayor Adams acknowledged that he, the candidate, is "responsible for reading, understanding, and complying with" applicable sections of

the New York City Charter, the Campaign Finance Act, and the Campaign Finance Board Rules. Mayor Adams also acknowledged that "to receive public funds in the [covered] election(s)," he, the candidate, "must satisfy the other conditions specified in the Act and Rules before [he] may receive public funds." Ex. A at 1. Finally, Mayor Adams specifically acknowledged that he, the candidate, is "responsible for [his] campaign's compliance with the Charter, the Act, and the Rules." *Id*. at 2.

16.     A "principal committee" such as Eric Adams 2021 or Eric Adams 2025 is a corporation, committee, political club, or combination of one or more individuals that has been "authorized by" a candidate "to aid or take part in the election of such candidate" and has been designated by the candidate as the principal committee. Admin. Code § 3-702(2), (7), (11); 3-703(1)(e). A principal committee "shall be the only committee authorized by such candidate to aid or otherwise take part in the election(s) covered by the candidate's certification [into the Matching Funds Program]," "shall not be an authorized committee of any other candidate," and "shall not have been authorized or otherwise active for any election prior to the election(s) covered by the candidate's certification." Admin. Code § 3-703(1)(e).

17.     As defined by the Campaign Finance Act and Board Rules, the entities relevant to a campaign for office are overlapping and inextricable. For example, the Campaign Finance Act at various times describes the "campaign[]," "candidate," and "committee" as the entities receiving or qualifying for public funds pursuant to the Program, making expenditures, and receiving contributions. *See, e.g.*, Admin. Code § 3-702(3), (6), (12), (21)(a), (22). In line with this approach, Board Rules define "candidate" as an inclusive term that means not only the individual running for office, but also their authorized committee(s), authorized committee treasurer(s), and any agents of the candidate. Board Rule 1-02.

5

18.     In its April 14th Response, the Campaign stated that "in preparing this response to the request for documentation, Counsel to the [2021 and 2025 Adams Campaign] Committees identified past and current employees, consultants, and agents of the Committees who potentially could be in possession of documentation responsive to the CFB's request . . . These individuals all advised Counsel that they were in possession of no records which have not previously been provided to the [Board] by the Committees." *See* Declaration of Paul S. Ryan in Support of the Answer, Ex. 22. The letter did ***not*** say that Mayor Adams was contacted and asked for relevant documentation responsive to the requests. This failure to produce documents from the candidate himself, or to affirmatively state that Mayor Adams is in possession of no responsive records, is non-compliant with the Board's request.

19.     On June 16, 2025, the Board sent a letter to Vito Pitta, counsel to the Adams Campaign, requesting additional documents and information from the 2021 and 2025 Campaigns. A copy of this letter is attached as Exhibit B. In this letter, the Board explained that the April 14th Response to the November 15, 2024 Request, and a May 16, 2025 response to an additional request for documents that had been sent to the Adams Campaign on April 11, 2025,[1]

---

[1] On April 11, 2025, Jesse Schaffer, Director of Special Compliance for the Board, sent a letter to Vito Pitta, counsel to the Adams Campaign, requesting documents and information from the 2021 and 2025 Campaigns. A copy of this letter is attached as Exhibit C (the "April 11th Request"). Like the November 15, 2024 request (Exhibit 4 to my declaration in support of the Board's Answer (the "November 15th Request"), the Board noted that staff was "reviewing the public funds eligibility of the Eric Adams 2025 Campaign" and said that the Board "has reason to believe that the [2021 Campaign and 2025 Campaign] committed violations of various federal statutes, Campaign Finance Act provisions, and/or Board Rules." In connection with the Board's consideration of the issue, the Board asked for documents/information relating to certain 2021 campaign fundraiser events, the Campaign's 2021 office at the New World Mall, and contributions solicited by certain individuals. The original deadline for a response was May 2, 2025, but Mr. Pitta requested and was granted an extension to May 16, 2025.

On May 16, 2025, Vito Pitta sent a letter to Mr. Schaffer responding to the April 11, 2025 request. A copy of the letter is attached as Exhibit D. In the letter, Mr. Pitta stated that Eric Adams 2021 and Eric Adams 2025 (the "Committees") had reviewed their records and found no responsive documents that had not already been submitted to the Board. The letter stated that "additionally, in preparing this response to the request for documentation, Counsel to the Committees identified past and current employees, consultants, and agents of the Committees who potentially could be in possession of documentation responsive to the CFB's request . . . These individuals all advised Counsel that they were in possession of no records which have not previously been provided to the [Board] by the Committees." The letter did not say that Mayor Adams himself had reviewed his records for responsive documents.

were deficient because the Campaign had not indicated that Mayor Adams was contacted and asked for relevant documentation responsive to the requests. Accordingly, the Board restated those requests for documents in full and advised the Campaign that it must provide responsive documents from Mayor Adams. The Board also asked for a list of the current and past employees, consultants and agents that were contacted by the Campaign in connection with the November 15th Request and April 11th Request. In addition, the Board noted that it had reviewed documents relating to *United States v. Eric Adams*, No. 24-cr-556 (S.D.N.Y.) released by the Department of Justice on May 9, 2025,[2] and was making additional new requests based on that review. The letter requires a response by July 11, 2025.

20.     On July 1, 2025, Mr. Pitta sent a letter to the Board requesting that the Board withdraw its June 16, 2025 letter requesting documents and information. A copy of this letter is attached as Exhibit E. In the letter, Mr. Pitta alleged that the Board made document requests to the Adams Campaign only to create a pretext for denying the Campaign public funds. Once again, Mr. Pitta claimed that the Board illegitimately relied upon the now-dismissed indictment to deny the Campaign matching funds.

21.     However, the Board's document requests are a legitimate exercise of its authority to see that public funds are spent appropriately. Under the Campaign Finance Act and the New York City Charter, the Board is vested with the power to "investigate all matters relating to the performance of its functions," including through the issuance of subpoenas related to such

---

[2] On April 25, 2025, Judge Ho granted a motion by the New York Times Company and NYP Holdings, Inc. seeking the public filing of the following materials from the U.S. Attorney's Office of the Southern District of New York's investigation and discovery process in *United States v. Eric Adams*, 24 Cr. 556 (DEH): (1) search warrants and accompanying affidavits identifying and describing evidence; (2) indexes compiled by the government that accompanied discovery productions to defense counsel; (3) a December 2021 application for a 2703(d) Order; and (4) an August 2024 application for a warrant for location data for Mayor Adams's cell phone. *See* Memorandum Order, *United States v. Adams*, 24 Cr. 556 (DEH) (S.D.N.Y. Apr. 25, 2025) (Dkt. No. 185).  On May 9, 2025, the government filed these items on the public docket.  *See* Letter by U.S.A. as to Eric Adams, *United States v. Adams*, 24 Cr. 556 (DEH) (S.D.N.Y. May 9, 2025) (Dkt. No. 191).

investigations. Admin. Code § 3-708(5); N.Y.C. Charter Chapter 46 § 1052(a)(5); *see also* Board Rule 12-01. Moreover, a "candidate's failure to keep or provide records or other information to the Board, upon its request or as required by these rules, may result in a determination that matchable contribution claims are invalid . . . ." Board Rule 4-04.  Consequently, while the Indictment against Mayor Adams has been dismissed, the Board still has an independent obligation to ensure candidate eligibility for matching funds.

22.     The Board will again assess whether the Adams Campaign has complied with its production obligations at the July 15 meeting. However, as of today, July 8, 2025, the Board staff will recommend that the Board find the Campaign not yet in compliance.

**The Conflict of Interest Board Disclosure Obligation Is Satisfied as of Today**

23.     On the next payment date, Board staff currently intends to recommend that the Board find that Mayor Adams's amendment to his annual disclosure ("COIB disclosure") accepted as complete by the New York City Conflicts of Interest Board as of April 25, 2025 currently satisfies Board Rule 3-01(d)(ii)(A)(4) and Admin. Code §§ 3-703(1)(d), (1)(m).[3]

24.     Rule 3-05(b) states that "[f]ailure to demonstrate compliance" with § 12-110 of the Admin. Code (relating to the COIB disclosure) three days prior to the next payment date, "may result in a delay of any payment by the Board." This means that where a candidate fails to timely demonstrate compliance, such failure will not serve as an automatic bar to payment on the *next* payment date and that if compliance is demonstrated less than three days prior to the current payment date, but still before the Board meets, the Board *may* determine that a candidate is eligible for public funds. It does *not* mean that the Board is required to make ad hoc decisions

---

[3] The Court's July 1, 2025 order also asked whether Mayor Adams's amendment to his COIB disclosure satisfies Admin. Code. §§ 3-703(6). This section of the CFA does not relate to Mayor Adams's COIB disclosure – rather, it relates to disclosure reports about campaign spending and contributions that are required to be submitted to the Board.

throughout the campaign cycle as and when campaigns come into compliance with the Rules, for the reasons explained in Paragraphs 4 through 8. The same is true of the language regarding a "delay of any payment" that is found in Rule 3-05(a) and Admin Code § 3-703(1)(m)(iii).

25.      Rule 1-04(b)(iii) governs the late submission of "disclosure statement documentation" to the Board. This Rule does not relate to the COIB annual filing (which is submitted to the COIB, not the Campaign Finance Board). Rather, it relates to disclosure reports about campaign spending and contributions that must be submitted to the Board pursuant to the CFA. *See* Admin Code. § 3-703(6), (12). Rule 1-04(b)(iii) operates similarly to Rules 3-05(a) and (b) – the Rule effectively sets a 5:00 p.m. deadline for the submission of disclosure statement documentation to the Board, but provides some flexibility for consideration by the Board if such documentation is provided before the Board meets to vote on payment but after the specified deadline.

26.      Other candidates have been found ineligible for public funds for noncompliance with § 12-110 of the Admin. Code (relating to the COIB disclosure) which resulted in a delay of payment by the Board until a subsequent payment date. Indeed, at the April 15 payment date, 69 participating candidates were found to be ineligible for a public funds payment for failure to demonstrate compliance with the COIB disclosure requirement, among other reasons. Benjamin Chou, a candidate for City Council District 19, and Radhakrishna Mohan, a candidate for City Council District 50, were found by the Board to be ineligible for public funds at the April 15 payment date solely for this reason. On April 17, 2025 Chou completed the COIB disclosure and demonstrated compliance with § 12-110. Chou's campaign received a payment of matching funds on the next payment date (May 12, 2025) – *not* on the date that he demonstrated compliance.

9

**Denial of Matching Funds to the Cuomo Campaign Due to Improper Coordination**

27.      On May 12, 2025, the Board voted to withhold public funds in the amount of $622,056 to the mayoral Campaign of Andrew Cuomo (the "Cuomo Campaign") based on the preliminary results of an investigation providing the Board with reason to believe that the Cuomo Campaign had violated Board Rule 6-04(a)(xi), a rule designed to prevent a practice known as "redboxing." A copy of the Board's press release describing this determination is attached as Exhibit F. Board Rule 6-04(a)(xi) states that an expenditure is not considered independent if the "entity making the expenditure has utilized strategic information or data… [that] has been made publicly available by the candidate … in a manner which the candidate … knew or should have known would facilitate such utilization." Non-independent expenditures are considered in-kind contributions. Where such a contribution is over the limit and from a corporate entity, the Board may withhold the amount of such a contribution from a public funds payment pursuant to the CFA. *See* Admin Code. §§ 3-703(1), 3-705(4). Accordingly, on May 12, 2025, the Board withheld what was believed to be the amount of the expenditure at issue – $622,056.

28.      On May 30, 2025, the Board voted to withhold an additional $675,420 from the matching payment issued to the Cuomo Campaign on that date (for a total withholding of $1,297,476) based on what was believed to be another non-independent expenditure.

29.      Based on subsequent documentation provided to the Board and in response to a Rule 7-09 petition from the Cuomo Campaign, the Board ultimately voted to revise the amount of withholding to $756,994 and authorize a payment to the campaign of $540,482.


  Dated:  July 8, 2025
        New York, NY

10

By:  _____

*Paul S. Ryan*